## ALLEN v. THE STATE.

1. Where a criminal case had gone to final judgment in a superior court, and, the presiding judge thereof being disqualified from taking any action in such case, the accused filed an extraordinary motion for a new trial, upon which a rule nisi was granted by the judge of another circuit, directing that the motion be heard before himself at a designated time and place, the effect was to render this motion returnable to the superior court of the county in which the motion was made; and though it was lawful to hear and determine such motion in vacation, it was still a proceeding pending in and to be disposed of by that court.

2. The jurisdiction to hear and determine such a motion was in the court, and did not belong exclusively to the particular judge by whom the rule nisi had been granted; and if for any reason he was not present to hear and dispose of the motion at the time fixed, it was competent and lawful for any other qualified judge of a superior court of this State, whose services had been procured for this purpose by the disqualified judge of the circuit, to hear and dispose of such motion.

3. This court will not overrule the discretion of the superior court in refusing to grant a motion for a new trial based upon the alleged disqualification of jurors, on the ground that they were not impartial but were prejudiced and biased against the accused, when the charge thus made was distinctly and circumstantially denied by the jurors under oath, and when the evidence upon this issue was not only decidedly conflicting, but sufficient to support a finding either way.

Argued October 11, 12, — Decided November 15, 1897.

Motion for new trial. Before Judge Candler. Bibb superior court. June 12, 1897.

Thomas Allen was convicted of murder, and upon the overruling of his motion for a new trial he brought a bill of exceptions, pending which he escaped from custody, and having failed to surrender himself, and not having been rearrested, the writ of error was finally dismissed on May 16, 1895. Subsequently he was rearrested; and upon a certificate of Judge Felton of his disqualification to preside in the case, and at his request, Judge Candler took jurisdiction and sentenced the defendant from the judgment of the Supreme Court, which by proper order had been made the judgment of the superior court. After this sentence an appeal was taken to the Supreme Court of the United States, where the judgment of the Supreme Court of Georgia was affirmed. Upon the filing of the mandate from the Supreme Court of. the United States, Judge Candler, at the request of Judge Felton, again resentenced the defendant. On June 1, 1897, counsel for the defendant presented an extraordinary motion for a new trial to Judge Reese, who thereupon passed an order, that the State's counsel show cause before him in Macon, on June 12, 1897, why the motion should not be granted; that the motion be filed in the office of the clerk of Bibb superior court; and that the execution of the sentence passed upon the defendant be suspended until the further order of the court. The extraordinary motion was filed, and Judge Candler was notified by Judge Felton of the filing of such motion and was requested by him to hear it at the time fixed in the order allowing it. Judge Candler went to Macon at the time set, and Judge Reese not being present, and no disqualification of Judge Candler being suggested, he heard the motion over objection of counsel that the motion was duly and fully provided for so far as a judge to preside and hear and determine the same was concerned; that Judge Felton had no authority to request Judge Candler, and the latter had no authority to comply with the request, to hear and determine the motion; and that under the facts Judge Reese had been prevented from acting as was contemplated by law, and Judge Candler had been substituted for him by Judge Felton,

who was disqualified, by reason of having been the prosecuting officer in the case, to·act on the motion or to exercise any control over it. Defendant excepted to the overruling of this objection, and to the overruling of the motion for a new trial after the hearing of the same together with the affidavits introduced thereon.

The grounds of the extraordinary motion for a new trial are, in brief, that two of the jury who tried the case were unfit to act as jurors, both of them being prejudiced against the defendant, and fully determined, in advance of the trial, to bring about his conviction and execution. The affidavits introduced for the purpose of supporting these grounds were met by a counter-showing on the part of the State, which, if credible, sustains the jurors so attacked and rebuts the testimony offered in support of the grounds attacking them.

*Preston & Ayer* and *Guerry & Hall*, for plaintiff in error. ·

*J. M. Terrell,* attorney-general, *Robert Hodges,* solicitor-general, and *John R. Cooper,* contra.

LITTLE, J. The plaintiff in error was convicted of murder in the superior court of Bibb, one of the counties of this State, which is included in the Macon judicial circuit. The questions which are presented here arose on the hearing of an extraordinary motion for a new trial, which was overruled by Judge Candler, judge of the Stone Mountain judicial circuit, and may be stated in a general way to be: First, did the judge who passed on the motion have jurisdiction to entertain and determine it? Second, did he commit error in overruling the motion and resentencing the plaintiff in error? The specific assignments of error in the rulings made are full, and clearly present these questions for adjudication. The presiding judge attaches to the bill of exceptions, and as a part of his certificate, certain statements which it is proper to consider in connection with the assignments of error; but it is only necessary to note here, as referring to the question of jurisdiction, that the judge says: "The extraordinary motion was filed; and I was notified by Judge Felton it was filed in the office of the clerk of the superior court of Bibb county, that he was dis-

·qualified to hear said motion; and requesting me to hear it at the time fixed in the order allowing it. I went to Macon at the time set. Judge Reese was not present at the time and place set; and no disqualification of mine being suggested, and there being none, I heard the motion."

It is conceded that Judge Felton, of the Macon circuit, was the solicitor-general of the circuit, and prosecuted the plaintiff in error under the indictment for murder, when that issue was tried in the superior court of Bibb county. He was therefore disqualified, under the terms of the Civil Code, § 4045, from passing on the motion. By the common law, the fact that a judge had been of counsel in a case was not a legal objection. 12 Am. & Eng. Enc. Law, 41, and authorities cited under note 1, page 42. Disqualification for this cause, therefore, is statutory, and the disability to preside is the result *alone* of the statute. From whatever source the disqualification to pre·side in a cause may arise, the effect, when such disqualification exists, is to divest jurisdiction, and the action taken is ·coram non judice, and void. But in giving effect to this statute, it is the clear province of the law that such must be done under the rules for the construction of statutes which are remedial in their nature and in derogation of common law. It may be remarked, in passing, that on this subject courts have gone to the extent of holding that such statutory provisions must give way to the necessities of justice, and to the paramount rights of litigants to have justice administered. 1 Freeman on Judgments, § 146. It does not, however, become necessary, in the view we take of the question, to enter this branch of discussion. It will suffice, in the construction of this statute, to seek the legislative will, and to bring within its terms those cases which the statute, fairly interpreted, may be construed to embrace. It will be noted that the words of the statute are, that "No judge or justice of any court, no ordinary, justice of the peace, nor presiding officer of any inferior judicature or commission, can *sit* in any cause or proceeding in which . . he has been of counsel." The language of this statute does not authorize this court to rule that such a presiding officer may not pass any order, nor give any direc-

tion in the case; but when he is prohibited in the language of the statute from *sitting*, this language will, as we understand it, apply to such acts, directions and orders as are judicial in their nature. "Sit" means "to hold court." Anderson's Dictionary of Law. "To hold a session, as of a court." Black's Law Dictionary. The word "sit," when used in the statute, is synonymous with the word "preside"; and it is fair in construing it, to hold that the language intended that any act done or order made in the case, of a judicial nature, is prohibited. Under the evident meaning of the word used in the statute, all such acts and orders would be void. 1 Fr. Judg. § 146; 24 Cal. 73; 23 Ala. 85; 23 Texas, 104. The constitution of the State of Texas, on this subject, is identical with the statute of Georgia, and prohibits a judge from "sitting in any cause when he shall have been of counsel in the case." And it was urged that under the constitution the presiding judge of a district court in that State was disqualified from taking action in a given case. Construing the meaning of the phrase, "sit in any cause," the Texas Court of Appeals (8 Texas App. p. 659), by Winkler, J., says, after referring to another provision of law that the parties may by consent appoint a person to try the case, etc., "Taking these several passages in connection, it would seem that when it is said that the judge shall not sit in any case, it is intended that he shall not do what the person chosen or appointed may do, that is, 'try the case.'" And further construing the language of the constitution, the court says, that while he can not sit in the trial of the cause, or make any ruling which would probably arise on the trial, he would not be incompetent to preside in taking incidental orders, as, for instance, *an order granting a change of venue*, or entering an order appointing a person agreed upon to try the case; nor would the disqualification prevent him from receiving the report of the grand jury for the term, although there be embraced in such report the return of an indictment in which he would not be qualified to sit. The Supreme Court of Iowa (5 Iowa, 486) rules: "It may well be doubted whether an order allowing the substitution of papers in a case, which had been destroyed by fire, so far involved judicial action as

to vitiate the proceedings because of the supposed interest of the judge in the case." In treating this subject, Judge Cooley, in his work on Constitutional Limitations, 6th ed. 509, concludes by saying: "Mere formal acts, to enable the case to be brought before a proper tribunal for adjudication, an interested judge may do, but that is the extent of his power." Practically the same views are taken by the Court of Appeals of New York (27 N. Y. 1), in which a very able and exhaustive treatment of • the subject is made, Folger, J., delivering the opinion of the court. In 27 Ala. 423, Goldthwaite, J., for the court says: "The general rule that it is irregular and improper for a judge to try any cause in which he has such interest as would disqualify him as a witness, does not apply to orders purely formal in their character; and it is doubtful whether it extends to a case in which no other judge can try and determine the case." It may therefore, we think, be conceded that while the statute forbids any judicial officer who has been of counsel in a particular case from thereafter presiding in the trial of such case, such prohibition is restricted to hearing the case, and to making or passing any order in relation thereto as may be judicial in its nature; but that such statute, when properly interpreted, does not prohibit such interested judge from giving direction for its hearing before another competent judicial tribunal having jurisdiction under the constitution and the laws. Indeed, the case in 8 Texas Appeals, supra, is direct authority that a proper construction of the statute does not prevent him from doing so; and Judge Cooley, quoted supra, in treating of the power of a disqualified judge to act, confines that power to formal acts "necessary to enable the case to be brought before a proper tribunal for adjudication." So much has been said to ascertain what character of action might be legally had by a judge in relation to a case pending in the court over which he presides, and in which, by reason of having been of counsel, he was disqualified under the statute from presiding.

In the present case the plaintiff in error submitted a motion for a new trial, on extraordinary grounds, to one of the judges of the superior courts of this State, presiding in a circuit other

than the one in which the judgment sought to be set aside was rendered. The record shows that after sentence had been pronounced on the plaintiff in error, he through his counsel presented to Judge Seaborn Reese, of the Northern circuit, a motion for a new trial, supported by proper affidavits showing the disqualification of Judge Felton, of the Macon circuit; that after hearing and considering such motion, Judge Reese passed an order that the State should show cause before him in the city of Macon, on the 12th day of June, 1897, why the motion for a new trial should not be granted. It was further ordered by Judge Reese, that the motion for new trial should be filed in the clerk's office of Bibb county; and that he took jurisdiction of said motion because of the disqualification of Judge Felton of the Macon circuit; and at the same time, by due order, a supersedeas suspending the execution of the sentence passed on movant, until the hearing and the further order of the court on said motion, was granted. The very able counsel for plaintiff in error, in their argument, cited us to section 4321 of the Civil Code as authority for this application. It may be observed, in passing, that this section of the code to which reference has been made is very broad and comprehensive. Whether sufficiently so to embrace a motion for a new trial arising in and returnable to a superior court of a county not within the circuit, we do not decide, as we have not given it critical examination for the purpose of determining; but recognizing the importance of the issue in the case before us, we will here assume that it is, and that such motion was properly made, which we are at liberty to do, as no question was raised as to the validity of the rule nisi under this motion. The rule nisi, by the order of the judge, was returnable to be heard by him in the city of Macon on the 12th day of June. Undoubtedly this motion was addressed to the superior court of Bibb county, and the order made on it was made by the judge of the Northern circuit alone because of the disqualification of the presiding judge of the Macon circuit. The order was filed in the office of the clerk of the superior court of Bibb county, and it was then a cause pending in the superior court of that county. The fact that the rule was granted as above stated, and the hearing

was to be had as ordered, does not at all affect the fact that such motion was a motion pending in the superior court. That the motion could be heard in vacation is provided by statute. Our constitution (Civil Code, § 5850) imposes upon the General Assembly the duty to provide by law for the appointment of some proper person to preside in cases where the presiding judge is from any cause disqualified; and the provision of our statute is, that when from any cause the judge of the superior court is disqualified from presiding, he shall procure the services of a judge of another circuit to try said cause, if he has to appoint an adjourned term for that purpose. Not only so, but our Civil Code, § 4328, prescribes that if such disqualified judge does not comply with the provisions of section 4326 within a reasonable time, when it is in his power to do so, his failure shall be a ground of impeachment. Having seen that a disqualified judge may do such formal acts as are necessary to enable the case to be brought before a proper tribunal for adjudication (Cooley on Constitutional Limitations, supra), and the object of our statute in giving such direction to a disqualified judge being to bring said cause to adjudication, it would seem to be entirely consistent that such judge might act in accordance with the statute, and yet be within the limitation as understood by the authorities to which we have heretofore referred. It can not be said that the action of the judge in procuring the services of another judge of the superior court is judicial in its nature. At all events it is the mode and manner pointed out by our statute; and the statute which prevents the disqualified judge from "sitting" in the case is no more imperative than the statute which requires him to procure the services of "another" judge to try the case. Both are equally binding, and must be construed in pari materia. Even if our reasoning is defective, and the authorities cited inapplicable to show that a disqualified judge could under general law legally procure the services of another judge to try the case, we must not so construe one of the statutes as to destroy the terms of the other. Construed together, the contemplation of the statute is clear and the conclusion irresistible, that a judge disqualified by reason of having been of counsel in a particular case can not preside—can not

sit — can not do any judicial act in that case; yet he *must* procure the services of another judge to try, and sit in that case, without unnecessary delay. If it be replied that so construed the statute gives the disqualified judge power to select a judge, the answer is, the law is so written. If the statute did not interpose, the judge would have the power to try — to preside in the case; while he is restricted in this, it is made his duty *officially* to procure the services of another judge not disqualified. Who or which judge within the State shall he procure to preside, the statute does not say, under the evident presumption that all alike are competent, capable, and fair.

By the provisions of our constitution (Civil Code, § 5847) jurisdiction to grant new trials is vested in the superior and city courts; and by section 4323, the superior and city courts have power to hear and determine in vacation, as well as in term time, all motions for new trials. It will be thus observed that new trials are granted by the superior court as a court, and not by the presiding judge in his capacity as judge. The intent of the law is that all adjudications on motions for new trials shall be by the courts; and in order that justice may be met in all cases, such motions may be heard in term time or vacation, under conditions prescribed in the statute. This motion for a new trial, then, was a cause pending in Bibb superior court; it was made the duty of the judge of the judicial circuit which embraced the county of Bibb to procure the services of another judge to try any disqualified cause pending in said court, and we conceive that this legal obligation was properly discharged when he sought and obtained the services of the judge of the Stone Mountain circuit to pass on the disqualified cause. We do not intimate that if at the time and place of hearing the judge of the superior courts of the Northern circuit had been present and heard the motion, his adjudication thereof would not have been lawful. See *Winter* v. *Muscogee Railroad Co.*, 11 *Ga.* 438. The facts of the case do not make it necessary for us to decide whether it would or would not have been so. The fact appears by the certificate of the judge who passed upon the motion, that he was requested to be present and pass on the same, and that Judge Reese, who theretofore

granted the rule nisi, was not then present. Under the law as we understand it to be, Judge Candler, of the Stone Mountain circuit, was strictly within the limit of his official duty in being present at the time and place for hearing the motion on the request of Judge Felton, and had jurisdiction to hear and determine the same.

The fifth, sixth, seventh and eighth specific assignments of error, as they appear in the bill of exceptions, may be considered together, in determining the question as to whether the plaintiff in error had a fair and impartial trial. The reasons assigned in the several grounds against the fairness of the trial are, that jurors J. H. Hunnicutt and James Earp were not impartial jurors; that the court erred in deciding that the question of the competency of juror Earp was res adjudicata; that there was error in denying the motion, because of the extraordinary and unusual state of facts shown by the record; that in addition to jurors Earp and Hunnicutt, the fairness and impartiality of jurors Johnson and Green had been attacked since the trial, by affidavits attached. The plaintiff in error contends that these facts were unknown to his counsel and himself, and could not have been discovered by diligence; that the evidence is not merely cumulative, but shows independent facts sufficient to have required a new trial; and that the state of mind of the jurors named, which was unknown at the time of the first motion, rendered them incompetent as jurors, and a verdict rendered by them is void. We have given to these questions due consideration, and the brief of authorities submitted careful attention. In passing on the questions raised by the assignments of error to the refusal to grant the motion for a new trial, we prefer to pass, as nearly as it may be done, on the merits of the grounds as shown by the evidence in the record. We are not unmindful that exceptions may be properly urged, and perhaps sustained, to some of the grounds as having been contained in the first motion, and therefore as not now to be considered; that others possibly are made too late, or present no meritorious reason for the grant of a new trial, when submitted in the form of an extraordinary motion. Without passing on these questions, we come, in view of the nature

and pressing importance of the case, to the consideration of the exceptions on their merits. Briefly stated these are, that four of the jurors, to wit, Johnson, Green, Earp and Hunnicutt, were not fair and impartial jurors at the time of the trial. Whether they were so or not is a question of fact. Nothing remains to be said of the right of a person accused to have the charge against him passed upon by fair and impartial jurors. Our organic law is careful to save this right to every citizen, and the whole spirit of jurisprudence everywhere is to secure the exercise of this right in the most complete manner. The constitution restricts the selection of jurors to upright and intelligent persons. The preliminary questions to test the fairness and impartiality of jurors, prior to their selection to serve in criminal cases where the charge is a felony, are so perfect, that if a juror be in fact an upright and intelligent man, to be taken he *must* be impartial. This court in the case of *Myers* v. *State*, 97 *Ga.* 76, speaking through Justice Atkinson, expressed not only the sentiments of the court, but those of all good citizens as well, when it said: "Since under our benign state of government no man can be deprived of life, liberty or property, except upon the judgment of his peers, it is the duty of courts scrupulously to guard the right of trial by jury as one of the essential incidents of our judicial system, and one the maintenance of which in its purity and integrity is necessary, not only to the perpetuity of our institutions of government, but likewise to the protection of the liberties of the citizen against the possible encroachments of arbitrary power." If it be true that the jurors named, at the time they entered upon the trial of the issues in the case of the State against the plaintiff in error, were not fair and were not impartial, but on the contrary were prejudiced against the defendant in that case, the verdict in which they participated, finding the plaintiff in error guilty, was void. The question of the fairness and impartiality of jurors being one of fact, and all presumptions being in favor of the verdict, and the jurors named having, on their voir dire, qualified themselves as fair and impartial, and as having no prejudice or bias either for or against the accused, it is incumbent upon the movant asserting the partiality and prejudice of

jurors to establish that fact by competent evidence. *Miller* v. *State*, 97 *Ga.* 653. The judge presiding on the hearing is the constituted tribunal in the first instance to decide on these matters of fact as to competency, and the rule of this court is now, as it has been, that the finding of the trial judge in favor of the competency of jurors attacked, will, when supported by the evidence submitted, be conclusive on the reviewing court. *Myers* v. *State*, 97 *Ga.* 76; *Wallace* v. *State*, 70 *Ga.* 722; *Hinkle* v. *State*, 94 *Ga.* 595.

It will serve no good purpose in this case for us to review in detail the testimony pro and con. in relation to the partiality or impartiality of the jurors named. The attack upon juror Green was withdrawn. As to the others it suffices to say, that the plaintiff in error submitted to the court below affidavits from various persons, showing conversations had with certain of the jurors before as well as after the verdict was rendered, giving expressions used by the jurors, which, if true, would certainly show that such jurors were not fair and impartial, and that they improperly and illegally qualified themselves to serve as jurors, and ought not to have done so. Then, affidavits were exhibited on the part of the State from the attacked jurors, denying all of the allegations that such partiality and prejudice existed, denying certain things stated which would show incompetency, averring entire impartiality and good faith, and detailing at length circumstances and incidents tending to show that as upright and intelligent men they qualified themselves as jurors, and considered the case in the light of the evidence, and rendered their verdict alone from the evidence. There is a distressing conflict in the affidavits submitted. Affidavits supporting the credibility of respective witnesses were also in evidence. In the ascertainment of the truth of the matter, this court would be entirely powerless, except to put the testimony of these witnesses number against number. Such is not our province, not our duty, nor would such a course on our part tend to promote justice, nor to find the real truth as it exists. This is not a court of appeals; under the constitution and laws of the State, it is a court for the correction of errors which have been committed by the rulings of the judges in those courts from

which a writ of error lies here.   Before this court can legally undertake to reverse a decision of a judge presiding in one of such courts, it *must* appear that an error has been committed. It is incumbent on the moving party to point out and demonstrate such error, before we can undertake to correct it.   As to what ruling or finding we would or would not have made, we can not consider in any case; but the sole question is, was there such error committed by the court below as moves this court to interfere and set aside the judgment.   .The plaintiff in .error says that such an error has been committed in overruling his motion for a new trial on the grounds stated, and by certain assignments he has undertaken to show that error.   So far as these pertain to the law, we have considered and adjudicated them.   We find the others to depend on the correct settlement of questions of fact.   The judge presiding below heard the evidence.   The evidence was conflicting.   We know not the truth of the matter; he judged of the evidence, weighed it, considered it, and pronounced upon it.   His finding in one view of the evidence is strongly supported, and under the universal rule which has governed in this court, his judgment must therefore stand.   Having, as we have endeavored to show, jurisdiction under the laws of this State to hear and determine the motion, having heard and determined it in the light of the evidence submitted to him, we can not, on a review of that evidence, say that he abused the discretion vested in him by law in rendering the judgment which he rendered; nor can we say, from a careful inspection and consideration of the evidence submitted, that his judgment is not supported; and we are therefore constrained to direct that the judgment of the court below be                     *Affirmed.   All the Justices concurring.*