## MEEKS *v.* GUCKENHEIMER & SONS.

1. The disqualification of a judge because of interest in a case, if known to the counsel for the losing party, must be suggested before the trial proceeds, and, if not then urged, can not afterwards be raised upon a writ of certiorari, or writ of error to review such judgment.
2. Even if, under the facts of the present case, the judge of the city court was in fact disqualified, it was too late to raise that question for the first time upon writ of certiorari.
3. There was evidence to support the judgment, and the court did not err in overruling the certiorari.

Submitted October 27, — Decided November 27, 1897.

Certiorari. Before Judge Sweat. Coffee superior court. July 31, 1897.

Suit was brought in the city court of Coffee county, against C. W. Meeks and R. Meeks, late partners under the name

of C. W. Meeks & Son, upon an account for goods which the plaintiffs claimed to have sold to the defendants in October and December, 1895. C. W. Meeks filed a plea in which he alleged that at the time the goods were sold there was no such firm as C. W. Meeks & Son, that he was not in any way connected with the purchase of the goods, had received no benefit from them, and was not liable therefor. Judgment was rendered against the defendants for the amount sued for. By petition for certiorari they alleged that the judge of the city court had been employed and had acted as attorney for the plaintiffs, and was therefore disqualified to try the case, that there had been no consent for him to try it, and the judgment was therefore illegal and void; and that the judgment was contrary to the evidence and without evidence to support it. The judge of the superior court overruled the certiorari and affirmed the judgment of the court below, and C. W. Meeks excepted. In his answer to the certiorari the judge of the city court states: The account sued on was originally sent for collection to a firm of attorneys at law, of which he was a member. Soon after receiving it he, together with his partner, went to see the defendants in regard to the collection of the claim, but were unsuccessful in getting the matter arranged; and sometime before the account was placed in suit the judge, believing it would have to be sued, relinquished all claims as an attorney for the collection of the same, and all right to any fees that might subsequently be realized from its collection. It was taken charge of by his partner in his individual capacity, and before the trial of the case they dissolved partnership. Before the case was called for trial, the judge went in person to one of the attorneys for the plaintiffs, and to the sole counsel for the defendant, and informed them of the connection he had formerly had with the claim before it was placed in suit, and stated that while he had no interest at that time in the outcome of the case in the way of fees or in any way, still he requested that the attorneys agree upon a pro hac vice judge to preside on the trial. Said attorneys then stated to him that they desired the case disposed of, and would waive the question as to his disqualification, and that they would rather that he go ahead and try the case; and

it was only after being thus solicited to preside at the trial that he consented to do so.

It appeared from the evidence, that the goods in question were shipped by the plaintiffs to C. W. Meeks & Son, on October 22, October 23, and December 4, 1895, orders for the goods having been received from Alexander, one of plaintiffs' salesmen, through whom the goods had been ordered by R. Meeks; and that they were delivered by the carrier to R. Meeks. The plaintiffs had at previous times sold goods, through the same salesman, to C. W. Meeks & Son, which firm was composed of C. W. Meeks and R. Meeks. Alexander testified, that in selling the goods he understood that he was dealing with C. W. Meeks & Son; that the goods were ordered at the store which was the place of business of C. W. Meeks & Son; and that he was not informed and did not know that the firm had been dissolved, or that R. Meeks then belonged to another firm. A member of the plaintiffs' firm testified, that the first notice he remembered having had of the dissolution of the firm of C. W. Meeks & Son was a letter dated October 9, 1895, signed by R. Meeks & Co., containing a draft which the letter stated was to settle an account of R. Meeks & Co., as successors to C. W. Meeks & Son. It was the custom of the plaintiffs, immediately upon the receipt of notice of any change in a firm name or address, to note such change upon their books of account, and no such entry had been made upon their books with reference to C. W. Meeks & Son. For this reason the witness was satisfied that no such notice was received by his firm prior to the letter referred to. The first intimation the plaintiffs had that the goods had been received and used by R. Meeks & Co. was long after the account had become due, and the first knowledge they had of the existence of such a firm was from the letter above mentioned. R. Meeks testified: The firm of C. W. Meeks & Son was dissolved April 22, 1895, and the firm of R. Meeks & Co. was formed April 23, 1895. He was a member of the latter firm, and the goods were ordered by him for it. They were used and disposed of by the firm of R. Meeks & Co., and C. W. Meeks knew nothing of this transaction and received no benefit from the goods. When the goods were ordered, witness

said to Alexander, plaintiffs' salesman, "You know about the change in this firm," or, "You know that firm has changed hands," and Alexander said "Yes." A short time before the goods were ordered, witness went to the office of plaintiffs to pay them a balance due them by C. W. Meeks & Son, and then told them that the firm of C. W. Meeks & Son had been dissolved, and that the firm of R. Meeks & Co. had been formed instead, and would carry on business at the old stand. No public notice of the dissolution of the firm of C. W. Meeks & Son was given.

*John W. Bennett* and *J. Walter Bennett*, for plaintiff in error. *Leon A. Wilson*, contra.

ATKINSON, J. The writ of certiorari lies for the correction of errors committed by inferior judicatories in ruling upon questions made before them; and if, upon the hearing of a writ of certiorari, a question is for the first time raised which was not ruled upon by the court whose judgment is under review, such a question will not be considered. This principle applied to the record in this case affirms the judgment of the court below in overruling the certiorari. Though the facts relating to the alleged disqualification of the trial judge were known to counsel for the losing party, no question thereon was either raised or suggested until after the verdict, of which complaint was made, was rendered. We do not mean that a disqualification in fact existed. In view of the statement contained in the answer of the county judge to the writ of certiorari, we think it was perfectly competent for him, under authority of the decision of this court in the case of *McMillan* v. *Nichols*, 62 *Ga.* 36, to preside upon the trial of this case. Conceding, however, the disqualification to have existed, we rule that, no question having been made upon the legal capacity of the trial judge to preside, his incapacity could not be suggested upon a writ of certiorari sued out to review the judgment. If he had been in fact disqualified to preside on the trial, and such fact was unknown to the losing party, and he was thus prevented from invoking a ruling thereon by the trial judge, his remedy was to move to set aside the judgment, and not to reverse it.

There was sufficient evidence to support the judgment of the county judge, and this court will not control the discretion of the circuit judge in refusing to set it aside.

> Judgment affirmed.   All the Justices concurring.