JULIANA v. THE STATE.

[No. 20,943.   Filed November 27, 1906.]

1. APPEAL AND ERROR.—*Affidavits.—Bill of Exceptions.*—Affidavits filed in the trial court in opposition to the appointment of a certain attorney as special judge, which are not contained in a bill of exceptions, are not a part of the record on appeal. p. 422.

2. COURTS.—*Judges.—Special.—Change of Venue.*—Under §1838 Burns 1901, §1769 R. S. 1881, the defendant in a criminal case has a right to a change of judge upon the filing of an affidavit alleging the bias and prejudice of such judge against him. p. 424.

3. SAME.—*Judges.—Special.—Appointment.*—The regular judge, upon a change of judge, may appoint some other judge, or some attorney in good standing, at his discretion, to try the cause.  p. 424.

4. SAME. — *Judges. — Special.—Competency.—Public Policy.*— Public policy requires that special judges appointed to try causes shall be competent and disinterested.  p. 424.

5. ATTORNEY AND CLIENT.—*Disclosures to, Before Employment.* —*Confidential Character of.*—Disclosures made by defendant's wife to an attorney, with a view to his employment, are confidential and privileged. p. 425.

6. COURTS.—*Judges.*—*Special.*—*Competency.*—An attorney, consulted by defendant's wife with a view to his employment and who examined the indictment and consulted with the defendant, but who was not retained, is not competent to sit as a special judge in defendant's case. p. 425.

7. SAME.—*Judges.*—*Freedom from Prejudice.*—Judges should avoid even the appearance of bias or prejudice in the trial of causes. p. 427.

8. SAME.—*Judges.*—*Interest.*—*Relationship.*—Judges who have even a remote interest in the cause on trial, or who are even remotely related to a party, should, of their own accord, vacate the bench and appoint a special judge. p. 427.

From Criminal Court of Marion County (34,797); *Wilborn Wilson,* Special Judge.

Prosecution by the State of Indiana against Michael Juliana. From a judgment of conviction, defendant appeals. *Reversed.*

*E. W. Little,* for appellant.

*Charles W. Miller,* Attorney-General, *C. C. Hadley, H. M. Dowling* and *W. C. Geake,* for the State.

MONTGOMERY, C. J.—Appellant was convicted upon a charge of burglary and grand larceny.

The first alleged error presented for consideration is the appointment of Wilborn Wilson, an attorney, as special judge, over the objection of appellant. A change of venue was taken from the regular judge of the Criminal Court of Marion county, and Mr. Wilson was appointed to try the cause. Appellant objected at the time to the appointment, and filed affidavits setting forth the grounds of his objection. It is insisted by the State that these affidavits must be disregarded, because not brought into the record by a bill of exceptions. This contention must be sustained. *Compton* v. *State* (1883), 89 Ind. 338; *Siebert* v. *State* (1884), 95 Ind. 471; Ewbank's

Manual, §26.   The court, however, heard oral evidence
upon the question raised by appellant's objection to the ap-
pointment of Mr. Wilson as special judge, and this evidence
has been properly brought into the record by a special bill
of exceptions.

Appellant's wife testified that after her husband's arrest
she went to Mr. Wilson's office and talked to him about de-
fending appellant—told him how it was, and what he was
arrested for, and wanted to know his fee.   Mr. Wilson tele-
phoned over to the criminal court, and learned that appel-
lant was arrested for stealing goods.   He asked if she had
any money, and she said, "No," and he said he would go
and see about it, and see appellant, and see how hard he
would have to fight, before fixing his charge.

Appellant testified that Mr. Wilson came to the jail and
told him that his wife had been over talking to him, and
asked if he had an attorney, and said he would like to have
the case, and, believing that his father had already hired
him, appellant said it would be alright.

Mr. Wilson testified that he had no employment, but that
Mrs. Juliana came to his office and said her husband had
been arrested for receiving stolen goods and had no attor-
ney; that she did not appear to know whether he had been
tried in the police court, but spoke of the grand jury, and
he then called up the criminal court and was informed that
appellant had been indicted, and was charged with grand
larceny and burglary; that he then went to the court-house
and examined the indictment, and there saw that Mr. Little
appeared as attorney for appellant, and then went to the
jail and asked appellant whether he had an attorney, and
he said "yes," and that his father had employed one, and
he did not care to employ an additional attorney in the case;
that no fee was agreed upon, but Mrs. Juliana said she
would get the money for the fee from her friends if he
would let her know the amount, but, on being informed that

Mr. Little was employed, the matter was dropped. He did not go into the details of the case, and on being asked as to his experience told Mrs. Juliana that his success had been good. Mr. Wilson further stated that he had not formed or expressed an opinion and had no interest in the case.

Upon these facts appellant objected to the appointment of Mr. Wilson as special judge, and the court overruled such objection and appellant excepted.

2. A change of venue from the judge of a court may be demanded upon an affidavit alleging his bias and prejudice against the defendant, as was done in this case. §1838 Burns 1901, §1769 R. S. 1881.

3. When a change of venue has been taken from the judge, he may call any other judge of any circuit, criminal, superior, or other court of general jurisdiction, or any judge of the Supreme Court, to preside in such case and try the same; and, if, in such case, it shall be difficult, in the opinion of the court, for any cause, to procure the attendance of any such judge, the court may, to prevent delay, appoint any competent and disinterested attorney of the State, in good standing, to act as judge in said cause. §1839 Burns 1901, §1770 R. S. 1881. The selection of an attorney instead of a regular judge of some other court rests in the discretion of the judge from whom the change is taken, and no claim in this case is made that the judge abused his discretion in this respect, but the question presented is whether the attorney chosen was "competent and disinterested" within the meaning of the law. The

4. question presented is important, and affects not only the rights of this appellant, but also the interests of the State and of society in general. The State is gravely concerned in maintaining the impartiality and disinterestedness of its courts.

It was made to appear that the attorney appointed as special judge in the case had been approached and consulted,

with a view to employment as an attorney in the case, by the wife of appellant. What was said between the wife and the attorney in that connection is but meagerly given, but it was privileged, and ordinarily cannot be inquired into or revealed. No contract of employment was closed at the time, for the want of sufficient facts upon which to fix the fee. The attorney, with a view to employment and to a proper adjustment of his charges, examined the indictment, and held an interview with appellant. The relation existing between appellant and the attorney during this interview was confidential, and what was said was and should be privileged. Their statements as to what was said are not in accord, but it is immaterial whether his proffered services as such attorney were accepted or declined by appellant, or whether he dropped the matter because a particular attorney already appeared of record as appellant's attorney in the case. The question under consideration cannot be decided by the test that no employment was actually consummated, nor by an inquiry as to what particular facts concerning his defense were communicated to the attorney by the appellant and his wife, in a confidential way. The attorney voluntarily set about to ascertain the facts necessary to a defense of the accused, and put himself into confidential relations with the appellant and one speaking in his interests, and upon this showing he should be held incompetent to sit as. judge in the case, without attempting to determine the exact limits of his knowledge of the facts involved or their probable effect upon his mind. If a full disclosure were made by a defendant under the circumstances shown, as might and should be done, some bias for or against him might naturally result. No man with a like opportunity to become familiar with the facts would knowingly be accepted to serve as one of a panel of twelve jurors. It is equally clear that the one man who may be the sole judge of the guilt of the accused should be held incompetent to

preside upon the trial of the case. If, as stated by the attorney, his services were declined in favor of another, and possibly a rival in business, the chances of a lingering bias against the accused might be increased. If, on the other hand, he was much impressed by the facts communicated tending to establish innocence, he might be biased against the cause of the State. In either case, if the facts were known to both parties, neither could feel that confidence in and respect for the court which it is the policy of the law to secure and maintain. The principle applicable has been forcibly and aptly stated in the case of *Oakley* v. *Aspinwall* (1850), 3 Comst. (N. Y.) 547, in which it was said: "The first idea in the administration of justice is that a judge must necessarily be free from all bias and partiality. * * * Mankind are so agreed in this principle, that any departure from it shocks their common sense and sentiment of justice. * * * It is the design of the law to maintain the purity and impartiality of the courts, and to insure for their decisions the respect and confidence of the community. Their judgments become precedents which control the determination of subsequent cases; and it is important, in that respect, that their decisions should be free from all bias. After securing wisdom and impartiality in their judgments, it is of great importance that the courts should be free from reproach or the suspicion of unfairness. The party may be interested only that his particular suit should be justly determined; but the State, the community, is concerned not only for that, but that the judiciary shall enjoy an elevated rank in the estimation of mankind."

In the case of *State, ex rel.,* v. *Hocker* (1894), 34 Fla. 25, 15 South. 581, 25 L. R. A. 114, the supreme court of Florida said: "The law which disqualifies a judge who has been of counsel in the case intends that no judge shall preside in a case in which he is not wholly free, disinterested, impartial, and independent. The great principle should

not have a narrow or technical construction, but should be applied to all classes of cases where a judicial officer is called upon to decide controversies between the people." See, also, *Hall* v. *Thayer* (1870), 105 Mass. 219, 7 Am. Rep. 513.

This court has very appropriately said: "Judges are by no means free from the infirmities of human nature, and, therefore, it seems to us, that a proper respect for 7. the high positions they are called upon to fill should induce them to avoid even a cause for suspicion of bias or prejudice, in the discharge of their judicial duties." *Joyce* v. *Whitney* (1877), 57 Ind. 550, 554. Other illustrative cases in this State are: *Leonard* v. *Blair* (1877), 59 Ind. 510; *Fechheimer* v. *Washington* (1881), 77 Ind. 366; *Chicago, etc., R. Co.* v. *Summers* (1887), 113 Ind. 10; *Waterman* v. *Morgan* (1888), 114 Ind. 237; *Lillie* v. *Trentman* (1891), 130 Ind. 16; *Winters* v. *Coons* (1904), 162 Ind. 26.

In the case of *Moses* v. *Julian* (1863), 45 N. H. 52, 84 Am. Dec. 114, a great many authorities upon the general subject of the disqualification of judges are gath-8. ered, and the court, borrowing in substance from a writer cited, said: "The most perfect integrity that can be in judges is no hindrance why the parties, who have causes depending before them, may not challenge them, or except against them, and why they ought not, of their own accord, to abstain from hearing causes in which they may have some interest, or where there may be some just ground for suspecting them, *. * * for although a judge may be above the weakness of suffering himself to be biased or corrupted, and may have resolution enough to render justice against his own relations, and in the other cases where it may be lawful for the parties to except against the judges, yet they ought to mistrust themselves, and not draw upon themselves the just reproach of a rash proceeding.". The declarations quoted were made in cases in-

volving the action of judges regularly chosen for the position, and assuredly the doctrine should not be less strict in case of the appointment of an attorney as special judge, with the entire bar of the State from which to choose.

It is our conclusion that Mr. Wilson was upon the facts disclosed incompetent to act as judge in the case, and that the court erred in making his appointment over the objection.

The judgment is reversed, and the cause is remanded with instructions to set aside the appointment of the special judge, and for further proceedings.