*Underwood, Haas & Gambrell, R. Emerson Gardner,* for defendant.

20021, 20041. SMITH *v.* QUEEN INSURANCE COMPANY OF AMERICA; and *vice versa.*

DECIDED JUNE 13, 1930.

*A. R. Ross, W. A. Woolen, H. H. Elders,* for plaintiff.

*Spalding, MacDougald & Sibley, D. D. Smith, H. H. Hargrett,* for defendant.

BELL, J.   E. L. Smith brought suit in the city court of Eastman against Queen Insurance Company upon a policy of insurance written by the defendant upon property of the plaintiff.   The trial resulted in a directed verdict for the defendant, and the plaintiff's motion for a new trial, assigning error upon that ruling, having been refused, he brought the case to this court upon the main bill of exceptions; whereupon the defendant sued out a cross-bill, assigning error upon exceptions pendente lite taken by the defendant to rulings with which it was dissatisfied.

In our opinion the record presents a proper case for the application of the rule that when this court or the Supreme Court has before it both a main bill of exceptions and a cross-bill, and the latter presents a question which is controlling upon the case as a whole, it will be disposed of first, and if the judgment therein excepted to is reversed, the writ of error issued upon the former will be dismissed.   *Central of Georgia Ry. Co.* v. *Bridwell,* 34 *Ga. App.* 77 (2), 81 (128 S. E. 238), and cit.

The suit was filed to the April term, 1928, of the city court of Eastman, and process was duly issued by the clerk in the name of Hon. O. J. Franklin, the presiding judge of that court.   There was no service as required by the process, and on May 7 Judge

Franklin passed an order making the following July term the appearance term of the case. For the same reason a like order was passed by him on August 6, 1928, making the case returnable to the succeeding October term. The defendant having been served on August 13, 1928, with a copy of the petition and process and of the two orders just referred to, it made a special appearance at the October term and moved to set aside and vacate these orders, and to dismiss the petition for want of service. The attack upon these orders was based upon the alleged disqualification of Judge Franklin to pass them, the contention being that he had formerly been of counsel in the cause. The matter was heard before the Hon. W. S. Mann, judge pro hac vice, who held the orders valid and refused to dismiss the petition, and these are the rulings (inter alia) complained of in the cross-bill. The policy sued on was one of fire insurance, and insured the plaintiff against loss by fire of a certain dwelling house and the furniture therein situated. The policy was left with the local agent for the convenience of the plaintiff, the insured, and after the fire the plaintiff procured the services of Judge Franklin in the matter of submitting a proof of loss and otherwise communicating with the defendant with reference to the payment of the policy, Judge Franklin having obtained the policy from the local agent for this purpose. The question as to his disqualification relates, therefore, to services performed by him for the plaintiff in connection with the cause, before the filing of the suit thereon.

Upon this issue Judge Franklin was sworn as a witness and testified as follows: "I am judge of the city court of Eastman, and was such judge at all times in 1927 and up until now. I have not been of counsel in this case for the plaintiff since this suit was filed in my court. Since March 3, 1927, and up until now I have had absolutely no interest in the outcome of this case and will not have any. When the order as taken at the April 1928 term and the order was taken at the July 1928 term, I was not in a financial way or any other way interested in the outcome of the case. The fourth Monday in April, the fourth Monday in July, and the fourth Monday in October of the respective years are the regular quarterly terms of my court. Some time prior to this matter passing into the hands of Colonel H. H. Elders, attorney of record for the plaintiff, Mr. Smith (the plaintiff) came to me and I had something

to do with it. I made out some proof claims, or rather proofs of loss, for the plaintiff and handled some correspondence. I think I wrote probably a few letters to the plaintiff regarding it. That is the only connection I had with it. I never was paid any fee, and never was promised any fee. I never expected any fee, because at that time I was handling another matter for the plaintiff, Mr. Smith, and what I did was mere accommodation up to that point. If I followed it up to the point of suing it, or finally closing it, I would have expected a fee out of it. I did not get any fee or expect any for services I performed up to that stage. All of these things were true when I signed both orders in my court in April and July, 1928. I represent the plaintiff in other cases in other courts. He came and discussed this case with me, what to do and so on. This proof of loss is my work. I think I recognize this summing up in pencil here in my handwriting. This is a carbon copy of the proof of loss that I prepared for the plaintiff in this case. Outside of that and writing some letters I had nothing to do with it, except to turn it over to Mr. Elders, the plaintiff's attorney of record in this case. I do not know whether I can be positive about the exact time. The only thing I remember as to the time is that I know that at the request of Mr. Smith, the plaintiff in this case, I either turned the papers over to him or mailed them to Mr. Elders. I do not remember which,—how they left me, whether by mail or handing them to him in person. I know it was through his request that they got away from me. I remember that Mr. Elders and I were representing Mr. Smith in another matter at the May term of the superior court of this county. That aids me in remembering. Mr. Elders was here at the May 1927 term of the superior court of this county, and I turned it over to him in my office. Since then I have had nothing to do with the case except as I had to do with it as judge here. . . I kept a file on this case, and it is available to me at this time. . . I never did make a special file for this insurance matter. I did not know of the trouble I would have with it, and I mixed it up with the other suit that I had for Mr. Smith. I represented Mr. Smith for probably two years prior to this matter, and I continued to represent him in reference to other matters. . . I represented Mr. Smith in only such cases as he brought me. I am not his general counsel. He has not brought me all cases in which he needed legal advice. I know he employed Mr. W. A. Wooten in some other cases."

The record further shows that on April 20, 1927, Judge Franklin wrote to Southern Adjustment Bureau, of Atlanta, Georgia, the following letter: "In re—Loss—Number 515—E. L. Smith, Chauncey, Georgia. On the 16th inst. I prepared proofs of loss under above-stated policy and forwarded same to Queen Insurance Company, Atlanta, Ga. On the 18th inst. I received a letter from it acknowledging receipt of same, in which it stated that the papers I sent them were forwarded to you. I therefore presume that they are now in your possession. Permit me to inquire: Are the papers or proofs in proper form? Kindly answer me yes or no. If not, then won't you kindly furnish me with your regular blank forms used by you for this purpose? As I hear some rumors that this fire was of incendiary origin, will you please intimate to me whether in your opinion there will be any question about paying the losses sustained under this contract?" Southern Adjustment Bureau replied by a letter dated May 4, 1927, in which it was stated that the document submitted as a proof of loss was not satisfactory, and that one of the blank forms of the company was enclosed "to be put to such use as your client E. L. Smith deems advisable." Judge Franklin replied to this letter on May 10, as follows: "Your letter of the 4th inst. to hand and noted. I have had the proof of loss form mailed me by you filled out and herein enclose same to you. I trust that you will find same in proper form, and that payment will soon be made for same." On October 19, 1928, after litigation began, and after the rendition of the two orders now drawn into question, Judge Franklin, by consent of the attorneys for both sides, entered an order reciting his own disqualification and appointing Hon. W. S. Mann as judge pro hac vice, who, as indicated above, presided in the main trial.

There was no dispute as to the facts stated above, and from them we think it is apparent that Judge Franklin was disqualified to sit in the cause. Section 4642 of the Code provides that "no judge or justice of any court . . . can sit in any cause or proceeding . . . of which he has been of counsel, . . . without the consent of all the parties in interest." It does not appear that Judge Franklin was prohibited from the practice of law in other courts than his own, nor that he was incapacitated to represent the plaintiff as attorney in the negotiations with the insurance company or the adjuster. The acts in reference to the city court of Eastman

place no such restriction upon the judge of that court. It is apparent that the services which he performed for the plaintiff were rendered in the capacity of an attorney, and were not those of a mere layman having a superior knowledge or experience in regard to such matters. The fact that the services were gratuitous did not exclude the relation of attorney and client between him and the plaintiff and is not determinative of the question for decision. 33 C. J. 1003. He had not represented the plaintiff in any case in court, with reference to the cause of action sued on, but in our opinion he had been "of counsel in the cause" within the meaning of the statute. That part of the statute here to be interpreted, though in derogation of the common law (*Tibbs* v. *Atlanta,* 125 *Ga.* 18 (2), 53 S. E. 811), is yet remedial, and therefore should be given a liberal construction so as to effect (but not to exceed) the intent of the legislature. *Allen* v. *State,* 102 *Ga.* 619 (29 S. E. 470) ; *Lears* v. *Seaboard Air-Line Railway,* 3 *Ga. App.* 614 (60 S. E. 343) ; *Stovall* v. *Joiner,* 10 *Ga. App.* 204, 205 (73 S. E. 22) ; State *v.* Hocker, 34 Fla. 25 (15 So. 581, 25 L. R. A. 114) ; State *v.* Omaha National Bank, 66 Neb. 857, 882 (93 N. W. 319) ; 15 R. C. L. 535.

We think it would be a narrow and technical construction to hold that the word "cause" should include only a suit or proceeding in court. Such an interpretation might seem to be required by some of the language in *McMillan* v. *Nichols,* 62 *Ga.* 36 ; but in that case the judgment was attacked merely by affidavit of illegality, and since the judgment could not be thus collaterally avoided, it was not necessary to decide whether the judge was disqualified because of his prior relationship to the plaintiff and the subject-matter. The opinion in *Meeks* v. *Guckenheimer,* 102 *Ga.* 710 (29 S. E. 486), contains language of the same import as that to be found in the *McMillan* case, but this also was obiter ; so that neither of these cases can be said to be binding as authority upon the question under consideration. A case more directly in point and one which seems to be controlling upon the question is that of *East Rome Town Co.* v. *Cothran,* 81 *Ga.* 359 (4) (8 S. E. 737). From the decision in that case it appears that Hamilton, trustee, procured an order from the judge of the superior court, on February 10, 1860, authorizing the sale of certain property in which his minor children were interested, but who were not represented by guardian

ad litem or otherwise. More than 15 years thereafter the judge of the superior court, on the petition of Hamilton and his wife, and after the appointment of a guardian ad litem for the children, passed at chambers an order "ratifying, confirming and approving" a sale to one Freeman under the original order, and "declaring the conveyance valid and legal to convey all the right, title and interest of the parties, including Mrs. Hamilton and her children." The judge who granted the last order was a member of the firm of attorneys who petitioned for the original order under which the sale was made, and upon a proper challenge of the validity of the second order in view of this fact, the Supreme Court held: "It is urged that this order of confirmation cured all defects in the title to Freeman, and this might be so, perhaps, had the judge not been disqualified; but his disqualification rendered the order voidable at the election of the minors after attaining their majority, there having been no express consent in writing waiving his disqualification. [Citations.] It is urged upon us that as Judge Underwood was absent when the business was transacted by his copartner in the firm name, and knew nothing of it, and never received any compensation for the service which his copartner in the name of the firm rendered, and did not become judge till long afterwards, he was free from disqualification; but we think otherwise. What his partner did in the firm name was done by the firm, and upon the firm responsibility, and this was so whether compensation was charged or not. When counsel, as counsel, render service gratuitously, and put themselves on record as of counsel for one of the parties, they are not thereafter eligible to adjudicate upon the results of such service, whether they have acted gratuitously or for compensation. Considerations of public policy are involved in the question. Freeman on Judgments, § 144 et seq. Had this been an order of sale, and not merely an order of confirmation, and had the sale taken place under it before it was set aside, it is not improbable that the transaction would have been good, notwithstanding the order was voidable; but as nothing has been done or was to be done in execution of the order, we are of the opinion that it is still voidable, on the part at least of the minor child who had not attained majority when the present case was brought." The statement of facts will show that the two orders involved in that case were not rendered in the same suit, but that each was a separate

proceeding, the first order having been defective because the children were not represented, and the second order having been obtained more than fifteen years afterwards for the purpose of curing this defect. The effect of the decision, however, was to hold that the judge who passed the second order was disqualified to grant it because of having been of counsel in the cause. There is a lack of harmony in the outside authorities as to whether the word "cause," or the like, as used in statutes as to the disqualification of judges who have previously been of counsel, should be so construed as to include the subject-matter before litigation began, or should be confined to the particular matter as a pending suit. In Davis v. Seaward, 85 Misc. 210 (146 N. Y. Supp. 981), affirmed in 171 App. Div. 963 (156 N. Y. Supp. 242), the court, after discussing the question quite thoroughly and citing numerous cases, ascribes to the word the more limited signification. On the other hand, in Slaven v. Wheeler, 58 Texas, 23, it was held that if an attorney "should advise as to a matter in dispute, the judge would thereafter be disqualified from sitting in the case, when it had ripened into a suit, even though he had charged no fee for his advice, provided he was consulted professionally. For he has then been of counsel in reference to the matter in dispute, and the reasons for his disqualification to sit in the case will never cease." A like view was taken by the Supreme Court of Hawaii, in the case of Henry Waterhouse Trust Co. v. Treadway, 29 Haw. 256, upon construction of a provision of the Organic Act to the effect that no person shall "sit as a judge in any case in which he has been of counsel." The court said: "Nothing is more essential to the good repute of the judiciary than a firm conviction in the public mind that its judgments are free from personal bias or prejudice on the part of those who compose it. It is immaterial whether the questions involved in any particular suit were predetermined by a judge while acting as counsel prior or subsequent to the institution of legal proceedings. He is just as much disqualified in one instance as in the other. It would entirely escape the spirit and purpose of the Organic Act to confine his disqualification to cases that had reached the point of actual litigation. Within the contemplation of the law his opinion would be just as fixed upon a matter in which he had acted as counsel before suit was brought as it would be if he had himself brought the suit and conducted its

trial." We go a long way for authority in citing this case, but it represents the utterance of a high American court, and expresses what, in our opinion, is proper reasoning and good law.

In the well-considered case of Tampa Street Ry. Co. v. Tampa Suburban R. Co., 30 Fla. 595 (11 So. 562, 17 L. R. A. 681), the Supreme Court of Florida held that, "Where an attorney advises a person that a certain instrument or permit or license gives him a legal right, and afterwards a controversy arises between such person and another as to whether or not it does confer such right, and the attorney has come to the bench, he can not sit in judgment between those persons in that controversy, but is disqualified to do so by virtue of such professional relation to the former party on the subject of that controversy." See also, in this connection, Anderson v. Rawley Co., 27 Haw. 60; State v. Perkins, 124 La. 947 (50 So. 805); Durham v. State, 85 Tex. Cr. 143 (124 S. W. 932); Juliana v. State, 167 Ind. 421, 426 (79 N. E. 359); 15 R. C. L. 534, § 22; 33 C. J. 1002. As to the portion of the same statute to the effect that a judge will be disqualified who is "related to either party within the fourth degree," our Supreme Court has held that the word "party" will include any person who is pecuniarily interested in the result of the suit, although not a party to the record and not necessarily bound by the judgment therein. Roberts v. Roberts, 115 Ga. 259, 262 (41 S. E. 616, 90 Am. St. R. 108); Dobbins v. Marietta, 148 Ga. 467 (97 S. E. 439). These cases by analogy, will further support the statement that the provision now under consideration should be given a liberal construction. Accordingly, we hold that Judge Franklin's representation of the plaintiff in the. ante litem negotiations operated to disqualify him, under the provisions of section 4642 of the Civil Code.

■ Did the orders passed by Judge Franklin merely for the purpose of extending the time for service and appearance and the issuance of new process constitute such judicial acts as were affected by his disqualification, or, in other words, did the entering of these orders amount to a sitting or presiding in the cause within the meaning of the statute? We think this question should also be answered in the affirmative. The disqualification will not extend to mere formal acts designed to bring the case before a proper tribunal for adjudication, but will prohibit the hearing of the case or the making or passing of any order in relation thereto which is

justiciable in its nature. *Allen* v. *State,* 102 *Ga.* 619 (29 S. E. 470) ; *Edwards* v. *Gabrels,* 168 *Ga.* 738 (148 S. E. 913). The granting of a motion to make a later term the appearance term and to perfect service in the meantime necessarily requires the exercise of a judicial function, since the motion should be granted or denied according to the diligence or laches of the moving party. The motion may be granted if the plaintiff has been diligent and is not at fault, otherwise it should be refused. Facts are to be considered, and the judgment should be made accordingly, and therefore it can not be said that the orders drawn into question in this case were mere formal or ministerial acts such as could have been performed irrespective of the judge's disqualification to preside at other stages of the proceeding. *Cox* v. *Strickland,* 120 *Ga.* 104 (7) (47 S. E. 912, 1 Ann. Cas. 870) ; *Russell* v. *Life Insurance Co. of Va.,* 34 *Ga. App.* 640 (130 S. E. 689) ; *Atlantic Coast Line R. Co.* v. *Singletary,* 159 *Ga.* 805 (126 S. E. 794) ; *Peck* v. *La-Roche,* 86 *Ga.* 314 (12 S. E. 638) ; *Marks* v. *Smith,* 4 *Ga. App.* 129 (4) (60 S. E. 1016) ; *Faulkner* v. *Walker,* 36 *Ga. App.* 636 (137 S. E. 909). The attack upon the orders is not collateral, but their validity has been directly drawn into question by a motion to vacate and set aside, filed in the particular case. The plaintiff in procuring such orders necessarily had knowledge of the disqualification of the judge to pass them. Under the evidence adduced, the motion of the defendant should have been granted, and if this had been done the petition would then have been subject to the further motion to dismiss for want of service, since the service which was had depended upon the validity of these orders, and should have fallen with them. *Shuford* v. *Shuford,* 141 *Ga.* 407 (9) (81 S. E. 115) ; *State Mutual Life Ins. Co.* v. *Walton,* 142 *Ga.* 765 (3) (83 S. E. 656). It is perhaps needless to remark that nothing said in this opinion is intended in the slightest degree as a reflection upon Judge Franklin. The case has presented the question of this disqualification as a matter of law, and not as a matter of fact, and neither his professional honor nor his judicial character is involved.

The main bill of exceptions presented the question of whether the policy was forfeited under the stipulation against a change of "possession of the subject of insurance (except change of occupants without increase of hazard) whether by legal process or judgment"

or otherwise. At the issuance of the policy the house was occupied by the plaintiff and his family as a dwelling. He and his wife afterwards separated, and she sued him for temporary and permanent alimony. On the hearing for temporary alimony the judge of the superior court signed an order granting the application, and further providing that "the plaintiff shall have the possession of the dwelling house of the defendant, where she now resides, until further order of the court." The defendant husband, who is the present plaintiff, did not thereafter occupy the house as a dwelling, but he would occasionally visit the place to see his children, and he had access to a room wherein he kept a desk and some other effects. This was the status of the property as to possession at the happening of the fire.

Upon proof of these facts in the trial of the present case the court directed a verdict for the defendant. An affirmance of this ruling would have made it unnecessary to go into the cross-bill, but to have reached that conclusion would have involved a decision not only of whether the purported change of possession was one prohibited by the policy, but also of whether the court was empowered to pass such an order upon a hearing for temporary alimony, that is, of whether the order was a valid and enforceable one, as must have been the case, before the policy could be held forfeited in consequence of such change of possession as resulted therefrom. *Athens Mutual Ins. Co.* v. *Evans,* 136 *Ga.* 584 (4) (71 S. E. 892).

These questions, the more especially the latter, were fraught with such doubt that we preferred to pass upon the cross-bill, since, according to our view, the rulings complained of therein were not only erroneous, but constituted such error as would affect the entire case and render it unnecessary to decide the questions raised by the main bill.

Moreover, if this is a correct appraisement of the exceptions contained in the cross-bill, it is the more logical procedure to place our judgment upon that than to rule upon the questions presented by the main bill.

*Judgment reversed on the cross-bill of exceptions; main bill dismissed. Jenkins, P. J., and Stephens, J., concur.*