## 52037. SCOGIN v. THE STATE.

STOLZ, Judge.

The defendant appeals from his conviction of abandonment.

The record shows that, during a pre-trial hearing in which the prosecutrix expressed her desire not to prosecute the case, the trial judge stated in part as follows: "Miss Ward, since I've known you for a good portion of that time, if not all that time [the 17 months since the birth of the illegitimate child during which the prosecutrix had been supporting the child], and you and I have discussed the matter of parental support before. You have asked me about it. You are well aware of the position that I have taken, and I have told you that every father has a legal duty to support his child; and that parental duty must be discharged by him. You have asked me how it could be done, and I have told you."

Subsequently in the hearing, defense counsel asked the judge, "If your Honor please, could I inquire in court whether you discussed this matter with Mrs. Ward before she swore out the warrant?" The judge replied, "Mrs. [sic] Ward was a waitress at Tony's Restaurant, and she informed me that she had a child that the father was not supporting, and *I informed her as to what, at her request, I told her what she could do.* I have no knowledge whatsoever, Judge Warnes [defense counsel]; I have never discussed the facts with her, but I think you'd do the same thing, under the circumstances, you'd see the type of thing — I have no objection to you [sic] knowing that. *I advised her that she could bring an action against him. I*

had no idea the action had even been brought until today. I don't know when she brought it or — I don't know any of the circumstances." (Emphases supplied.)

At the trial a week later, defense counsel argued his motion for the trial judge to disqualify himself "on the grounds that he had previously been of counsel to the prosecutrix, Elizabeth Jean Ward; and that he had some conversations with her prior to the time the warrant was taken out; and had had some discussions with her concerning the swearing out of the warrant for abandonment."

The trial judge denied the motion, stating as follows: "Let the record show that Elizabeth Jean Ward at one time worked as a waitress at Tony's Restaurant, where I on most occasions do eat my lunch, but that I was personally there in that capacity, and that over a period of time that Elizabeth Jean Ward, and did mention to me probably more than one occasion, and I'm sure it was more than one occasion, that she had a child and that the father of the child was not supporting it and *asked my advice as a lawyer, a person whom she knew to be a lawyer,* what she could do about it. And that I advised her that — Well, I understood that she had been married and divorced from the father; and that, as of now, I don't know to the contrary, for that matter. But *I advised her that, in that event, that she could attach him for contempt of court for failing to support the child as ordered by the court. And that, in any event, that she might seek in a warrant for abandonment of her child;* and that is the extent of any advice that I have given her. And that's advice that I would give to any person at any time who asks me a similar question. I have never heard, until earlier this week, of Robert Wood Scogin. His name was never mentioned to me; and it was a surprise to me to find that he's being prosecuted in this case. And *my relationship with Mrs. Ward or Miss Ward had been solely that of telling her how she could obtain support for the child;* and not giving her legal advice specifically to do any specific act, such as obtain a warrant." (Emphases supplied.)

1. Enumerated error 3 contends that "[t]he trial court's refusal to permit the prosecutrix to dismiss the proceedings against defendant below was an improper

interference by the trial court with the discretions of the solicitor." As the trial judge pointed out, however, once the warrant had been obtained by the prosecutor, it became a matter of the discretion of the state as to whether the prosecution was to continue, and the state, as parens patriae, has a tangible interest in providing for the welfare of its children where, through criminal neglect, the fathers are not performing their statutory duty of support. This enumeration is without merit.

2. The trial judge erred, as contended in enumerated error 1, in denying the motion to disqualify him in this case.

"No judge . . . of any court . . . shall . . . preside, act, or serve, in any case or matter . . . in which he has been of counsel . . . without the consent of all parties in interest..." Code § 24-102. It is at least arguable that the trial judge was "of counsel" to the prosecutrix in this case. As a "part-time judge," he was not prohibited from the practice of law. See Ga. L. 1878-79, pp. 291, 300, § XLI; Code of Judicial Conduct, Compliance with, 231 Ga. A-14, A. The giving of legal advice constitutes "practicing law" in this state. It is apparent from the judge's own statement that the legal advice he gave the person who was later to be the prosecutrix in this action, was rendered in the capacity of a lawyer, and not as a mere layman having a superior knowledge or experience in regard to such matters. The fact that the services were gratuitous did not exclude the relation of attorney and client between him and the present prosecutrix. Neither can "of counsel" be so restricted as to include only representation in a suit or proceeding in court, since this statute, though in derogation of the common law, is yet remedial, and therefore should be given a liberal construction so as to effect the intent of the legislature. See *Smith v. Queen Ins. Co.*, 41 Ga. App. 587, 592 (2) (153 SE 785) and cits.

Even pretermitting the question of whether the judge had a statutory duty to disqualify himself, however, such a duty was imposed by the Code of Judicial Conduct, 231 Ga., pp. A-1 through A-15. Pertinent (either directly or indirectly) canons of this Code are as follows: "Canon 2. A Judge Should Avoid Impropriety *and the Appearance of Impropriety* in All His Activities. A. A judge should

respect and comply with the law and should conduct himself at all times in a manner that promotes public confidence in the integrity and *impartiality* of the judiciary. B. A judge should not allow his family, *social, or other relationships* to influence his judicial conduct or judgment . . ." (Emphases supplied.)

"Canon 3. A Judge Should Perform the Duties of His Office *Impartially* and Diligently . . . A. (4) . . . [E]xcept as authorized by law, [a judge should not] consider . . . communications concerning a pending or *impending* proceeding . . . C . . . (1) A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, . . . D. Remittal of Disqualification. A judge disqualified by the terms of Canon 3C(1) (c) or Canon 3C(1) (d) may, instead of withdrawing from the proceeding, disclose on the record the basis of his disqualification. If, after such disclosure, the parties and lawyers, independently of the judge's participation, all agree in writing that the judge's relationship is immaterial or that his financial interest is insubstantial, or, irrespective of substantiality of interest or degree of relationship, agree to waive such disqualification, the judge is no longer disqualified, and may participate in the proceeding. The agreement, signed by all parties and lawyers, shall be incorporated in the record of the proceeding." (Emphases supplied.)

"Canon 5. A Judge Should Regulate His Extra-Judicial Activities to Minimize the Risk of Conflict with His Judicial Duties. . . C . . . (1) A judge should refrain from . . . business dealings that tend to *reflect adversely on his impartiality, interfere with the proper performance of his judicial duties, . . . or involve him in . . . transactions with . . . persons likely to come before the court on which he serves."* (Emphasis supplied.)

"Compliance with the Code of Judicial Conduct." 231 Ga. p. A-14: "A. Part-time Judge. A part-time judge is a judge who serves on a continuing or periodic basis, but is permitted by law to devote time to some other profession or occupation and whose compensation for that reason is less than that of a full-time judge. A part-time judge: . . . (2) should not practice law in the court on which he serves or in any court subject to the appellate jurisdiction of the

court on which he serves, or act as a lawyer in a proceeding in which he has served as a judge or in any other proceeding related thereto."

While we, like the above cited Code of Judicial Conduct, recognize the reality that we have part-time judges, and that they, unlike full-time judges, who are prohibited by Canon 5(F) from practicing law, are permitted to practice law, the above quoted canons evidence a basic, underlying philosophy of minimizing even the appearance of partiality in judges. Thus, even if it was permissible for the judge to give legal advice to the waitress of the restaurant where he was accustomed to eat, he should have disqualified himself in the subsequent trial in which she was the prosecutrix, regardless of whether he felt he could be impartial in the case, in the absence of a written agreement of waiver, as provided by Canon 3(D) of the Code of Judicial Conduct, supra. Enumeration of error 1 is meritorious.

3. The remaining enumeration of error, dealing with allegedly unauthorized comments and arguments of the prosecution, is not now ruled on, since this is unlikely to recur upon another trial.

Accordingly, for the reason stated in Division 2 hereinabove, the judgment of conviction is set aside and the case is remanded to the trial court for a new trial before another judge.

*Judgment reversed and case remanded. Bell, C. J., and Clark, J., concur.*

ARGUED APRIL 5, 1976 — DECIDED MAY 12, 1976 — REHEARING DENIED JUNE 9, 1976.

*James C. Warnes, Edward D. Talley,* for appellant. *Ken Stula, Solicitor,* for appellee.