Bobby Wayne MENDENHALL,
Petitioner

v.

Joe S. HOPPER, Warden, Georgia State
Prison, Respondent.

No. CV476–335.

United States District Court,
S. D. Georgia,
Savannah Division.

May 9, 1978.

Edward T. M. Garland, Atlanta, Ga. (Garland, Nuckolls, Kadish, Cook & Weisensee, P. C.), Atlanta, Ga., Gerald Alch, Boston, Mass., for petitioner.

Arthur K. Bolton, Atty. Gen., Richard L. Chambers, John C. Walden, John W. Dunsmore, Jr., Asst. Attys. Gen., Atlanta, Ga., for respondent.

## ORDER

LAWRENCE, District Judge.

Petitioner is an inmate at Georgia State Prison in Reidsville. He filed a petition in this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on December 20, 1976. Mr. Mendenhall entered a guilty plea on April 24, 1973, in the Superior Court of DeKalb County to two counts of murder in the first degree and one count of aggravated assault. He was sentenced by Judge Clyde Henley to life imprisonment on each murder count and to ten years imprisonment on the aggravated assault charge, the sentences to run concurrently.

Prior to filing his federal habeas petition, Mendenhall sought state habeas corpus relief in the Superior Court of Tattnall County, urging the same grounds now raised in this Court. *Mendenhall vs. Hopper,* Case No. 75–209. An evidentiary hearing was held before Judge John R. Harvey on January 27, 1976. On June 6, 1976, that Court denied the petition. The Supreme Court of Georgia thereafter denied the request for a certificate of probable cause to appeal from the lower court's ruling. Mr. Mendenhall has exhausted his available state remedies as required by 28 U.S.C. § 2254(b). *Martin v. Estelle,* 492 F.2d 1120 (5th Cir.), *cert. den.* 419 U.S. 868, 95 S.Ct. 125, 42 L.Ed.2d 106.

Petitioner's collateral attack on the convictions is based on the following grounds:

(1) His guilty plea was not voluntary and was not based on an intelligent waiver of his rights to a trial properly resolving the issue of his sanity at the time of the alleged offense;

(2) Following Petitioner's release from a pretrial psychiatric examination, the trial court failed to conduct on its own motion an evidentiary hearing to resolve the issue of Mendenhall's sanity at the time of the commission of the acts constituting the crime which failure was a denial of due process of law;

(3) The failure of the Superior Court judge who accepted the plea and imposed punishment to disqualify himself in the proceeding was a deprivation of Petitioner's right of due process.[1]

(4) Petitioner was denied effective assistance of counsel in that Petitioner's attorney failed to have him enter a plea of not guilty by reason of insanity and because counsel did not more exhaustively examine the psychiatrist prior to trial in connection with the psychiatric report submitted to the court.

As stated, a hearing on Petitioner's state habeas corpus petition was conducted on January 27, 1976, before Judge Harvey in Tattnall County Superior Court. Findings of fact and conclusions of law were embodied in his Order of June 7, 1976. See *Mendenhall vs. Hopper*, Case No. 75–209. The transcript and the Order are part of the record.

Under 28 U.S.C. § 2254(d), the findings of fact by the state court after a full and fair hearing on the merits are generally presumed to be correct upon federal review unless the proceeding in the state court falls within one of the statutory exceptions which rebut the presumption of reliability. *LaVallee v. Delle Rose,* 410 U.S. 690, 93 S.Ct. 1203, 35 L.Ed.2d 637 (1973); *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct.

745, 9 L.Ed.2d 770 (1963); *Banda v. Estelle,* 519 F.2d 1057 (5th Cir.), *cert. den.* 423 U.S. 1024, 96 S.Ct. 467, 46 L.Ed.2d 398. Considerations of comity and judicial economy require that federal courts do not hold separate evidentiary hearings where the fact finding on the state level is found to be adequate. *West v. Louisiana,* 478 F.2d 1026 (5th Cir.).

The transcript and hearing record reveal that the Superior Court of Tattnall County conducted a full and fair hearing on the merits of the issues raised in the same petition. This Court accepts the findings of fact contained in the State court's order.

However, a district judge may not defer to a state court's finding of law on a habeas corpus petition. "It is the district judge's duty to apply the applicable federal law to the state court fact findings independently." *Townsend v. Sain, supra,* 372 U.S. at 318, 83 S.Ct. at 760; *Stone v. Wainwright,* 478 F.2d 390 (5th Cir.), rev'd on other grounds, 414 U.S. 21, 94 S.Ct. 190, 38 L.Ed.2d 179; *Peters v. Rutledge,* 397 F.2d 731 (5th Cir.). There remains only the task of applying federal legal standards to those factual findings.

I

On December 14, 1971, Petitioner fatally wounded two of his neighbors and seriously wounded another by use of a high-powered rifle. The neighbors had voiced opposition to his wife's application for a zoning variance which would allow her to run a beauty shop in their home, and the application had been denied.

One or two days after this tragic incident, Clyde Henley, then a practicing attorney, visited Petitioner at the request of Mrs. Mendenhall. He made no inquiry as to the facts surrounding the charges but inquired only as to Mendenhall's financial status. Mr. Henley declined to take the case and told Mrs. Mendenhall that her husband "was a sick man and needed treatment."

---

1. The argument as to disqualification of the trial judge is based on an alleged conflict of interest arising by reason of the fact that Judge

Henley, while in private practice, conferred with Mr. Mendenhall and his wife concerning the possibility of handling the defense.

(T–80). Subsequently he became a judge of the Superior Court of DeKalb County. Petitioner's guilty plea was entered before Judge Henley.

Thereafter Mr. Charles Edwards was retained by Petitioner. He moved for and was granted a psychiatric evaluation by a Dr. Cohen in Atlanta. Dr. Cohen reported that Mendenhall "suffers from a serious depressive illness with a distinct possibility of suicidal attempt." A Petition for Mental Examination was granted by Judge Clarence Peeler, Jr., of the DeKalb County Superior Court on January 24, 1972. Petitioner was delivered to Central State Hospital in Milledgeville "to be examined as to his sanity *on and subsequent to December 14, 1971.*"

Examination upon admission to Central State Hospital revealed that Mendenhall had a past history of mental disease. Records procured from Grady Memorial Hospital indicated that he had been admitted for one and a half months in 1964, and diagnosed as having a "depressive reaction."

Petitioner stayed at Central State Hospital from January 25, 1972, until March 27, 1973, under the care of Dr. Bosch, Unit Director of the Maximum Security Unit, and others. The court was notified of the diagnosis of schizophrenia, schizo-affective type, with some paranoid trend. On March 21, 1973, fourteen months after admission, the Superior Court of DeKalb County was advised by a letter from Dr. Bosch that the forensic staff had determined that Petitioner's psychosis was in partial remission and that he was competent to advise counsel and assist in the preparation of his defense. The Staff's opinion further stated that "as to his condition at the time of the alleged crime, it is felt that probably he was suffering from an acute psychosis on that date and therefore, he could not control his actions and could not distinguish right from wrong, and this opinion is based upon our examinations, evaluations, and diagnosis given."

Mrs. Mendenhall testified at the State habeas hearing that Mr. Edwards told her that he had received the medical report. She stated that "he said they had used the word, probably, in that report. I do not know what the report said other than probably that he was not responsible for what happened the day that it happened . . . the jury could take it either way." (T–86). Mr. Mendenhall testified, "I didn't know anything about it. As far as I knew I was okay and I was headed for the electric chair." (T–110).

Attorney Edwards did not contact the doctors at Central State Hospital in order to discuss the meaning of the report. Dr. Bosch testified at the habeas hearing that he used the word "probably" because "this is something you can never be sure, because you are not there." It was his opinion, based on a reasonable degree of medical certainty, that on the day of the crimes Mr. Mendenhall "was having a compulsive delusion to do that." (T–39). Judge Harvey found that Dr. Bosch was of the *"opinion, based on a degree of reasonable medical certainty* that Petitioner on the 14th day of December, 1971, the date that the Petitioner shot the three people, *could not distinguish right from wrong."* (Superior Court Order, p. 4).

When Mendenhall pleaded guilty before Judge Henley in DeKalb Superior Court on April 24, 1973, he responded thusly to the following questions:

"Q. Are you able to hear and understand my statements and questions?

A. I am not well.

Q. You can understand what I am saying?

A. I hope so."

Thereafter the plea of guilty was entered. Mrs. Mendenhall testified that Mr. Edwards whispered the proper responses to her husband. (T–92). His attorney testified that he could not recall doing so but that he could have, as he sometimes does. (T–126).

At the State habeas hearing Mr. Taylor, Assistant District Attorney who participated in the arraignment and sentencing, related a conversation between Judge Henley and Mr. Edwards in which Judge Hen-

ley said he "wouldn't have touched the case for less than $15,000.00." (T–94, T–145). Mr. Taylor was aware, at the time the plea was entered, of the report from Central State Hospital and of the testimony that Dr. Bosch would give if called upon. After his sentencing, Petitioner made irrational statements regarding his neighbors. Testimony at the habeas corpus hearing indicated that he feared his neighbors and was suspicious of them.[2]

## II

The United States Supreme Court has ruled that due process requires that a guilty plea must be knowingly, intelligently and voluntarily made and that the court make a determination to this effect before accepting the plea. *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274. See also *Colson v. Smith,* 438 F.2d 1075, 1079 (5th Cir.). A number of cases have dealt with the issue of voluntariness, especially where there are claims that the defendant was drugged or incompetent.[3] Few cases, however, have squarely faced the problem of defining and applying the "knowingly" and "intelligently" requirements.

In *McMann v. Richardson,* 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763, the United States Supreme Court held that a defendant's plea of guilty, based on reasonably competent advice, is not open to attack on the ground that counsel may have misjudged the admissibility of a confession. In *Tollett v. Henderson,* 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235, the highest Court reaffirmed its ruling in *McMann v. Richardson* that a defendant's only recourse after a guilty plea is to attack the voluntary and intelligent character of the plea, which may in some instances include an attack on the competence of counsel.

The requirement that a guilty plea be knowing and intelligent is particularly important in light of the fact that the plea involves the waiver of a number of rights. "Waiver of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States,* 397 U.S. 742, 748, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747.

■ In dealing with the subject of effective assistance of counsel as related to knowing and intelligent guilty pleas, the Fifth Circuit has said that it is the lawyer's duty to ascertain whether the plea is entered voluntarily and knowingly. *Herring v. Estelle,* 491 F.2d 125 (5th Cir.). In that case the attorney failed to inform the defendant of a defense which, if sustained, would have rendered him liable for a lesser offense than that charged. The Court held that effective assistance of counsel embodies a requirement that the defendant be afforded "an understanding of the law in relation to the fact." *Id.* at 128. Counsel's advice must permit the accused to make an informed and conscious choice. See also *Edwards v. Estelle,* 541 F.2d 1162 (5th Cir.), cert. den. 430 U.S. 973, 97 S.Ct. 1662, 52 L.Ed.2d 367; *Mason v. Balcom,* 531 F.2d 717 (5th Cir.); *Lee v. Hopper,* 499 F.2d 456, 462 (5th Cir.), cert. den. 419 U.S. 1053, 95 S.Ct. 633, 42 L.Ed.2d 650; *Walker v. Caldwell,* 476 F.2d 213 (5th Cir.); *Colson v. Smith, supra; O'Neal v. Smith,* 431 F.2d 646 (5th

---

**2.** Dr. Bosch testified that "the most prominent symptoms that we [had] seen during the time that he stayed in the hospital was the delusional symptom, the delusional persecution that this man was having during this time that he was in the hospital. We refer to people watching him, neighbors focusing . . . focusing light over his house during the all day and night, especially at night, people making him phone calls and not even a phone call, peoples putting something . . . he use to have an airplane, people trying . . . putting something in the ga . . . in the gasoline in the plane and the plane won't work. And, uh, and people in the neighborhood put in his . . . they had searched around his house. And this was the delusional symptoms, the most prominent symptom of this particular patient . . ." (T–33).

**3.** The petition before this Court does not appear to raise an issue of incompetency at the time of the plea. The report from Central State Hospital indicated that Petitioner was competent at that time and no evidence was produced to the contrary.

Cir.); *Lamb v. Beto,* 423 F.2d 85, 87 (5th Cir.), *cert. den.* 400 U.S. 846, 91 S.Ct. 93, 27 L.Ed.2d 84. The Court in *Herring v. Estelle* emphasized that by failing to advise Herring as to how the facts of his case related to the Texas law of robbery, counsel made certain that his client's plea could not be knowingly and voluntarily entered. *Id.* at 129. "[R]easonably effective counsel either would have advised Herring to plead not guilty or, at the very least, would have explained to him the Texas law of robbery . . .." *Id.*

As developed in the State court, the record reflects more counseling of Mrs. Mendenhall than of the defendant.[4] Mr. Edwards testified to, and the State court found, a number of appropriate factors which influenced *his* decision to abandon the plea of not guilty by reason of insanity. (T–120–21). Apparently counsel did share some of his reasons with Mrs. Mendenhall (T–86). However, he never informed her about the psychiatric diagnosis. It appears that she was told only of the uncertainty as to what the jury might do, that the pressure of trial would be hard on her husband, and that the death penalty could be imposed if the defense failed.[5]

Mr. Mendenhall testified that he did not know about the report from Central State Hospital. (T–110). He was aware that at one time the insanity plea had been considered because his wife told him. But his testimony indicates that neither the law nor the facts relevant to a plea of insanity were ever explained to him or discussed with him. He testified that a plea of insanity was never suggested or proposed to him by his attorney. (T–110). When asked about his counseling of Mr. Mendenhall, Mr. Edwards stated, " . . . of course I talked to him for quite some time. . . ." (T–118).

The record discloses that Mr. Mendenhall was not aware of the results of the psychiatric evaluation. The advisability of pursuing a defense of not guilty by reason of insanity was not adequately discussed with him or with his wife by counsel. The judge did not raise the issue or question Mr. Mendenhall on the subject.[6] "An accused who does not receive reasonably effective assistance of counsel in connection with his decision to plead guilty cannot be said to have made that decision either intelligently or voluntarily." *Mason v. Balcom, supra,* at 725.

■ The Superior Court of Tattnall County found that Mr. Mendenhall's plea was knowing, intelligent, and voluntary. However, federally-protected rights were waived by such plea. What constitutes a valid waiver, where the right allegedly waived is a federal right, is a federal question and a state court's finding does not bar an independent determination in the federal habeas corpus proceedings. *Hamilton v. Watkins,* 436 F.2d 1323 (5th Cir.); *Alvarez v. Estelle,* 531 F.2d 1319 (5th Cir.), *cert. den.*

---

4. She testified at the hearing that Mr. Edwards assured her at one point "not to worry about it, that he had campaigned for [Henley] while he was running for Judge." (T–87).

5. There is grave doubt whether the death penalty could have been constitutionally imposed for a murder committed in 1971 under the law of this State then in existence. In *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (decided June 29, 1972) the Supreme Court held that the imposition of the death penalty in that case constituted cruel and unusual punishment. As a response to *Furman* the Legislature in 1973 amended the law dealing with the death penalty in capital cases. Ga.Laws, 1973, pp. 163, 165, 170; Ga.Code Ann. §§ 26–3102; 27–2534.1. In *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859, the highest Court upheld the constitutionality of the new Act.

6. The case of *Suggs v. LaVallee,* 570 F.2d 1092 (2nd Cir.), possesses factual resemblances to Mendenhall's. The decision of the Second Circuit speaks sharply on the duty of the arraigning state judge, who is alerted to the fact of doubt as to mental capacity, to conduct a full inquiry into the voluntariness of the plea. See 570 F.2d at 1096, 1116–18. The principal difference between the two cases is that *Suggs* involved insufficient inquiry as to competency at the time of the guilty plea while the present one concerns acceptance of such a plea in the face of awareness by the Court, the prosecution and defense counsel of doubt as to capacity at the time of the crime, together with an inadequate inquiry into the subject before accepting the plea.

492 U.S. 1044, 97 S.Ct. 748, 50 L.Ed.2d 757. As noted above, this Court cannot defer to the state court's application of federal law to its factual findings. It is the duty of this district court to measure the facts found by federal legal standards, independently of the state court's ruling.

■ The plea of guilty entered by Mr. Mendenhall was not entered voluntarily, knowingly, and intelligently as required by the decisions of the United States Supreme Court. *Boykin v. Alabama, supra.*[7]

### III

Petitioner's next contention is that the Superior Court of DeKalb County denied him due process by its failure to resolve the question of his sanity at the time of the crimes.

■ Petitioner's Memorandum of Law in Support of his Petition for Writ of Habeas Corpus correctly states the test for determining criminal responsibility. Acts committed without the requisite mental capacity are not criminal acts. To allow a defendant to be tried while he is legally insane is a denial of due process. Where evidence before the trial court raises a bona fide doubt as to a defendant's competency to stand trial, the judge must inquire into the matter *sua sponte.* See *Pate v. Robinson,* 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815.

■ However, Petitioner has not cited, and this Court cannot find, a case suggesting that the same affirmative duty may be imposed upon the judge when the evidence raises a bona fide doubt as to the defendant's sanity at the time of the crime *vis à vis* his competency at the time of the trial. Although such a hearing would have been prudent, it apparently is not required as a matter of law.

### IV

Petitioner contends that the judge who accepted his guilty plea and who entered

the sentence should have disqualified himself.

Under Ga.Code § 24–102, "No judge or justice of any court . . . shall sit in any cause or proceeding . . . nor preside, act, or serve, in any case or matter . . . in which he has been of counsel." The Code of Judicial Conduct of the American Bar Association was in effect when the plea was entered, having been adopted in 1972. "A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where: . . (b) he served as lawyer in the matter in controversy. . . ." Canon 3C(1). In *Scogin v. State,* 138 Ga.App. 859, 227 S.E.2d 780, the Court of Appeals said that "[e]ven pretermitting the question of whether the judge had a statutory duty to disqualify himself . . . such a duty was imposed by the Code of Judicial Conduct . . . ." The Georgia Code of Judicial Conduct became effective after the Judge accepted Mendenhall's guilty plea. See 231 Ga. A–1 through A–15 [effective January 1, 1974].

When asked if he ever requested the judge to recuse himself, Mr. Edwards replied, "I hadn't gotten to that. If we had gotten to a trial or was going . . . to try it, I would have but we didn't get to trial . . . I couldn't see . . . that it made any difference that he accepted the plea." (T–130–131).

■ The failure of a sentencing judge to disqualify himself *sua sponte* may not, without more, reach federal constitutional dimension requiring habeas relief under 28 U.S.C. § 2254. I have found no case that clearly holds that failure to recuse is a ground for such relief. In a number of decisions federal courts have found that there was no basis in fact for the state judge to disqualify himself and thereby have avoided the question of the right to habeas relief in the event the grounds for recusal were valid. See *Ross v. Reda,* 510

---

**7.** The plea of guilty in this case was entered and accepted nearly four years after the decision in *Boykin v. Alabama, supra,* in which the Supreme Court held that there must be an affirmative showing of the plea being intelligently and voluntarily made.

F.2d 1172 (6th Cir.), *cert. den.* 423 U.S. 892, 96 S.Ct. 190, 46 L.Ed.2d 124; *Gamez v. Beto,* 406 F.2d 1000 (5th Cir.); *Chromiak v. Field,* 406 F.2d 502 (9th Cir.), *cert. den.* 396 U.S. 1017, 90 S.Ct. 581, 24 L.Ed.2d 508; *Goodspeed v. Beto,* 341 F.2d 908 (5 Cir.), *cert. den.* 386 U.S. 926, 87 S.Ct. 867, 17 L.Ed.2d 798, rehearing den. 386 U.S. 969, 87 S.Ct. 1032, 18 L.Ed.2d 126; *In re Johnson,* 277 F.Supp. 267 (D.C., Tenn.). These cases implicitly support the view that failure by a judge to disqualify himself which serves to deprive the defendant of an unbiased trier of fact is a denial of due process. See *United States v. Denno,* 313 F.2d 364, 374 (2nd Cir.), *cert. den.* 372 U.S. 978, 83 S.Ct. 1112, 10 L.Ed.2d 143.

In this Court's view of the record, the sentencing judge in this case should have voluntarily disqualified himself. For the sake of appearances, if nothing else, he should have had no part of a case in which he had been consulted while at the bar. It is true that he merely discussed the ability to pay attorney's fees with defendant's wife and that he was not retained by and never represented Mendenhall.

■ But apart from the question of disqualification and good faith on the part of the sentencing judge (which is not questioned), the arraignment fell short of federal constitutional standards. An arraignment proceeding is not a perfunctory ceremony—a mere litaneutical formality. Under Rule 11, F.R.Cr.P., the district judge is required to address the defendant personally and to question him carefully so as to insure that the requirements as to voluntariness are met. Mere routine questioning by the judge is not enough. *Coody v. United States,* 570 F.2d 540 (5th Cir.). A state court is under no less obligation to the defendant. "What is at stake for an accused facing death or imprisonment demands the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence." *Boykin v. Alabama, supra,* 395 U.S. at 243–44, 89 S.Ct. at 1712.

■ A lawyer who spoke with a defendant the day after the crime and who told the wife of the accused that he was "a sick man" and who later as the judge in the case is presented with a psychiatric report stating that the defendant was probably legally insane at the time of the crime should not accept a guilty plea without closely scrutinizing the possibility of an insanity defense.

The record reflects no reference to any sanity question during the arraignment although everyone concerned was alerted to its existence. No factual basis was presented to the Court regarding criminal intent or capacity. Mendenhall expressed his belief at the time that he was not well and only "hoped" that he could understand the proceedings. At the end of the hearing Petitioner vented certain paranoid suspicions regarding his neighbors.

The failure of the Court to inquire fully into the sanity problem amounted, in my judgment, to a deprivation of due process. The fact that the sentencing judge acted pursuant to what amounted to a plea bargain does not put a different complexion on the matter.

V

Petitioner's final contention is that he was denied effective assistance of counsel. Since that issue hinges mainly on the failure of Mr. Edwards to pursue more vigorously the matter of defendant's capacity at the time the crimes were committed, a review of the record in respect to that issue will be helpful.

The Georgia law as to mental capacity of persons at the time of the alleged criminal act is as follows:

"Mental capacity; insanity

A person shall not be found guilty of a crime, if at the time of the act, omission, or negligence constituting the crime, such person did not have mental capacity to distinguish between right and wrong in relation to such act, omission, or negligence." Ga.Code § 26–702.

"Delusional compulsion

A person shall not be found guilty of a crime when at the time of the act, omis-

sion, or negligence constituting the crime, such person, because of mental disease, injury or congenital deficiency, acted as he did because of a delusional compulsion as to such act which overmastered his will to resist committing the crime." Ga.Code § 26–703.

The Committee Notes commenting on these sections state that they were intended to codify the standard enunciated in *Roberts v. State,* 3 Ga. 310, 326, that if a man's "reason and mental powers are either so deficient that he has no will, no conscience or controlling mental power, or if through the overwhelming power of mental disease, his intellectual power is for the time obliterated, he is not a responsible moral agent, and is not punishable for criminal acts."

Mendenhall's wife testified that Mr. Henley, after interviewing her husband, told her that he "was a sick man and needs treatment." (T–74). Following the guilty plea hearing, Mr. Edwards informed her that Judge Henley had remarked to him that he "would not touch the case for less than $15,000.00" attorney's fee. (T–145).

At the State habeas hearing the attorney was asked: "Did Judge Henley ever discuss with you or bring up to you, uh, the possibility . . . or his considering disqualifying himself on his own motion?" Edwards replied: "No. I didn't handle the arrangement of plea. I mean, with him, I didn't do that. And so, uh, I don't know whether he discussed that with anyone else or not, he didn't with me." (T–132).

At the habeas hearing the prosecuting attorney, Mr. Taylor, threw additional light on the subject of the insanity feature of the case. He testified that after he and Edwards had worked out a plea agreement, they presented it to the Judge. According to Taylor, the question was asked, "Well, isn't there an insanity offense [*sic*] here?"

"Q. By whom?

A. By the Judge Henley, I'm sure.

Q. Was this on the record?

A. No, this was informally in camera, uh, between the three of us." (T–146).

The Assistant District Attorney further testified:

"[A]t that time I told him . . . there's going to be a conflict in testimony here. I did call Doctor Bosch subsequent to March 15th, 1973, and asked him about what he's going to testify to and what this probably means. And I asked him if . . . if with any certainty he's going to come and say with absolutely certainty he was incompetent on that day. And he said he wasn't going to testify to that effect, he would testify as we previously explained or expect.

Q. In other words . . . are you saying now that you did have a conversation with Doctor Bosch prior to the acceptance of the plea by Mr. Mendenhall in which Doctor Bosch said that he would be prepared to testify as he had today, that is he had an opinion based upon a reasonable degree of certainty. . . .

A. That's right.

Q. . . . that Mr. Mendenhall was legally insane at the time of the act?

A. Right. On the other side, the point . . . the prosecution point, he was not going to testify with absolute certainty.

Q. Well, you, as a lawyer, know that absolute certainty is not required as far as admissibility, isn't that correct?

A. That affected, though, my evaluation of the . . . prosecute ability of the case." (T–146–147).

### VI

As noted earlier, the advice of counsel to a defendant entering a guilty plea must be within the "range of competence demanded of attorneys in criminal cases." *McMann v. Richardson, supra,* 397 U.S. at 770–71, 90 S.Ct. at 1449; *Tollett v. Henderson, supra,* 411 U.S. at 268, 93 S.Ct. at 1608. The Court of Appeals for this Circuit holds that the standard for determining effective assistance of counsel is "not errorless counsel, and not counsel judged ineffective by hindsight, but counsel reasonably likely to render and rendering

reasonably effective assistance." See *MacKenna v. Ellis,* 280 F.2d 592, 599 (5th Cir.), *cert. den.* 368 U.S. 877, 82 S.Ct. 121, 7 L.Ed.2d 78; *United States v. Fessel,* 531 F.2d 1275, 1278 (5th Cir.).[8] A defendant is entitled to effective assistance of counsel in determining how to plead and in making his plea and can attack his conviction collaterally if he is not given this right. *Van Moltke v. Gillies,* 332 U.S. 708, 721, 68 S.Ct. 316, 92 L.Ed. 309; *Colson v. Smith, supra.* Reasonably effective assistance is an easier standard to meet in the context of a guilty plea than in a trial but counsel still must render competent service. *Herring v. Estelle, supra,* at 128. They must ascertain whether the plea is entered voluntarily and knowingly and must actually and substantially assist the client in deciding whether to plead guilty by providing an understanding of the law in relation to the facts. His advice need not be perfect but it must be reasonably competent so as to permit the accused to make an informed and conscious choice.

▮ If counsel is retained rather than appointed, the requisite state involvement must be shown. In *Fitzgerald v. Estelle,* 505 F.2d 1334, 1338, *cert. den.* 422 U.S. 1011, 95 S.Ct. 2636, 45 L.Ed.2d 675, the Fifth Circuit thus summarizes its standards for determining state action as a condition to habeas relief on the ground of ineffective assistance of retained counsel:

> "[W]henever the actions of retained counsel operate to deprive the trial of fundamental fairness then the Fourteenth Amendment due process had been violated notwithstanding any kind of specific involvement by a particular state official. If a retained counsel's actions do not sap the proceedings' fundamental fairness, but are challenged as less than reasonably effective in violation of the Sixth Amendment, state involvement through actual or constructive awareness of the error by the judge, prosecutor, or other responsible official who could have corrected it, must be shown."

Such requirements have been applied to cases of guilty pleas. *Ballard v. Maggio,* 544 F.2d 1247, 1250 n. 3 (5th Cir.).

As discussed in Part II of this opinion, counsel failed to reveal to Mr. Mendenhall facts pertinent to a possible defense of insanity and to insure that Mendenhall's plea was voluntary, intelligent, and knowing. The District Court of Maryland recently held that "trial counsel's failure to discuss [the insanity defense] and to explore the possibility of advancing an insanity defense was outside the range of competence expected of him as a defense attorney in a criminal case involving a very serious charge." *Springer v. Collins,* 444 F.Supp. 1049, 1065 (D.Md.). In that case, the defendant had no history of psychiatric treatment and was diagnosed after the trial as suffering from alcoholic psychosis (a personality problem only recently gaining recognition as a form of legal insanity). The Maryland Court relied largely on Fifth Circuit cases, all of which involved trials rather than guilty pleas. In each of these, counsel was found to have failed to investigate adequately and to raise the defense of insanity or related questions and, therefore, to have provided ineffective assistance. See *United States v. Fessel, supra; United States v. Edwards,* 488 F.2d 1154, 1164 (5th Cir.); *Brooks v. Texas,* 381 F.2d 619 (5th Cir.). In the latter it was emphasized that the case against the defendant was so strong it was clear that there was no reasonable defense other than insanity.

The defense of insanity was the only reasonable defense available to Mendenhall, as his counsel himself realized. (T–117–18). Dr. Bosch had advised the Superior Court of DeKalb County in March, 1973, that "at the time of the alleged crime, it is felt that probably he was suffering from an acute psychosis on that date and therefore, he could not distinguish right from wrong." It seems to me that entirely too much empha-

---

**8.** The dichotomy of viewpoint existing in the various Circuits in respect to the standard of competence is referred to in the dissent to the denial of certiorari in *Marzullo v. State of Maryland,* 561 F.2d 540 (4th Cir.), cert. denied — U.S. ——, 98 S.Ct. 1885, 56 L.Ed.2d 394. See 23 Cr.L. 4042, May 3, 1978.

sis was and is placed on the use of the word "probably" in the diagnosis.

Mr. Edwards testified that he felt that "the report was not strong enough . . to actually support [a plea of insanity]." (T–123). The State habeas court also emphasized this weakness. (Superior Court Order, pp. 4, 7). The use of the term "probably" in no way precluded the reliance on an insanity defense. "An expert witness should not be barred from expressing his opinion merely because he is not willing to state his conclusion with absolute certainty." His view as to "probabilities" may be helpful. 31 Am.Jur.2d Expert and Opinion Evidence § 44. Indeed, so much was conceded by the prosecuting attorney at the habeas hearing (T–146–147).

As the testimony of Dr. Bosch at the state habeas hearing reflects, inquiry would have revealed a stronger case on the sanity issue than supposed. In fact, the Superior Court found that Dr. Bosch would have testified that it was his opinion, based on a reasonable degree of medical certainty, that Mendenhall was legally insane at the time of the crime. (Superior Court Order, p. 4).

 Defense counsel did not adequately investigate the matter of the insanity defense, did not adequately inform and advise his client as to the advisability of utilizing such defense, and did not raise and press the issue of disqualification of the judge.

 The State habeas court found that the services rendered by Mendenhall's attorney measured up to the standard prescribed in *Tollett v. Henderson, supra,* 411 U.S. at 268, 93 S.Ct. 1602. The issue of effective assistance of counsel presents a mixed one of law and fact. However, the "factual determinations made by state habeas courts which federal courts must presume to be correct pursuant to § 2254(d) do not include mixed questions of fact and law." *Mason v. Balcolm, supra,* 531 F.2d 717.

## VII

Viewing the record in this case as a whole and not in its separate parts, the conclusion is inescapable that due process and adequate representation by counsel were lacking in the arraigning and sentencing procedures. Where crimes so heinous as those charged against Mendenhall are involved, it is by no means easy to set aside the considered judgments of state courts. However, no other result than that reached in this case can fulfill the overriding duty of a United States court to make its own independent examination of the record when federal constitutional violations are alleged, a duty resting "on our solemn responsibility for maintaining the Constitution inviolate." *Napue v. Illinois,* 360 U.S. 264, 271, 79 S.Ct. 1173, 1178, 3 L.Ed.2d 1217.

## ORDER

The petition for a writ of habeas corpus is hereby granted. The State of Georgia will have forty-five (45) days within which to re-arraign Petitioner. If Mendenhall should enter a plea of not guilty, the State will have a reasonable time within which to try him for the crimes charged in the indictment.