**UNITED STATES of America ex rel. Michael SALISBURY, Petitioner-Appellant,**

v.

**Frank BLACKBURN, Warden, Louisiana State Penitentiary, et al., Respondents-Appellees.**

No. 85–3201.

United States Court of Appeals, Fifth Circuit.

June 20, 1986.

Gregory J. Noto, Sidney D. Torres, III, Chalmette, La., for petitioner-appellant.

Abbott J. Reeves, Asst. Dist. Atty., Gretna, La., for respondents-appellees.

Before GOLDBERG, WILLIAMS and DAVIS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

This is an appeal from a denial of a writ of habeas corpus brought pursuant to 28 U.S.C. § 2254. Michael Salisbury was accused of committing a forcible rape on March 6, 1979, and simple kidnapping (of a different victim) on March 7, 1979. On April 2, 1979, he was indicted for these offenses. The Louisiana state court ordered a lunacy hearing for Salisbury, and after the hearing he was found incompetent to assist in his defense. He was sent to a mental hospital in Louisiana on April 24, 1979.

On May 21, 1979, the hospital reported that after evaluation and treatment, the staff psychiatrist had declared Salisbury competent to stand trial. On August 10, 1979, with counsel present, Salisbury pled guilty to both crimes. Salisbury was sentenced to twenty years hard labor for the rape, to run concurrent with five years hard labor for simple kidnapping.

In his habeas petition, Salisbury urges that his guilty plea was not "intelligent and voluntary" and thus was accepted in violation of his due process rights under the Fourteenth Amendment because (1) he was not informed by the court that he could plead not guilty by reason of insanity; and (2) he was under the impression from discussions with friends and law enforcement officials that he would go to a hospital instead of to prison if he pled guilty. We reject Salisbury's claims and affirm the district court's dismissal of the habeas petition.

## I. FAILURE OF TRIAL COURT TO INFORM OF INSANITY DEFENSE

The trial judge did not inform Salisbury during the hearing at which the plea of guilty was entered of the availability of an insanity defense. Salisbury urges that the judge had been alerted to the possibility that the defense might apply in this case because the same judge had ordered the lunacy hearing for Salisbury and incarcerated him in a mental hospital after his arrest until he was pronounced competent to stand trial. Salisbury contends that without this instruction from the judge his plea could not be considered "intelligent and voluntary." In this appeal, Salisbury does not assert that his counsel was incompetent or failed to advise him of the existence of the insanity defense. Rather, Salisbury's sole challenge is to the proceeding conducted by the judge prior to the acceptance of the guilty plea.

■ *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), established a due process requirement that the record must affirmatively disclose that a guilty plea was entered intelligently and voluntarily. In *Boykin,* the Court reversed the defendant's conviction based upon his guilty plea because the record was "wholly silent" on whether the judge asked the defendant any questions, or whether the defendant ever addressed the court. *Id.* at 240, 89 S.Ct. at 1710, 23 L.Ed.2d at 277. The question before us is whether *Boykin* requires that a judge who has reason to believe that an accused had problems of mental illness at or after the time of the crime must instruct the accused that he has the option of pleading not guilty by reason of insanity before accepting a guilty plea where no claim is made that the accused was not made aware of that option by

counsel. We find that the judge does not have such a duty.

■ As a general rule, *Boykin* does not require that an accused be informed of the option of pleading the insanity defense before sentencing. F.R.Crim.P. 11 sets forth the procedure used in federal courts for the taking of a guilty plea. Rule 11 creates a strict rule of procedure for federal courts which requires that defendants be advised of certain rights they are waiving and consequences of a guilty plea before the plea may be accepted as "intelligent and voluntary." Rule 11 specifically lists the rights and consequences that must be told to the defendant. The list in Rule 11 is both "inclusive and exclusive." *United States v. Dayton*, 604 F.2d 931, 937 (5th Cir.1979) (en banc), *cert. denied*, 445 U.S. 904, 100 S.Ct. 1080, 63 L.Ed.2d 320 (1980). In other words, if a defendant is informed of the listed rights and consequences of a guilty plea, he "need be informed of no others ..." *Id.* The option to plead not guilty by reason of insanity is not among those listed. Thus, Rule 11 does not require the judge to inform of the option to plead not guilty by reason of insanity before a plea may be considered "intelligent and voluntary." *See id.*

The constitutional requirements on state courts for acceptance of a guilty plea are, of course, no more strict than the requirements of Rule 11. *McChesney v. Henderson*, 482 F.2d 1101, 1110 (5th Cir.1973), *cert. denied*, 414 U.S. 1146, 94 S.Ct. 901, 39 L.Ed.2d 102 (1974). It logically follows that a plea can be found "intelligent and voluntary" in the state courts even though the defendant has not been informed by the judge of his right to plead not guilty by reason of insanity.

■ Moreover, insanity is in essence a defense to the charge against defendant. *Boykin* does not require that a defendant be provided with an enumeration of every right or every defense available to him.

*Tollett v. Henderson*, 411 U.S. 258, 267, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235 (1973); *United States v. Frontero*, 452 F.2d 406, 415 (5th Cir.1971). Carrying appellant's position to its logical conclusion, a judge who had a suspicion that an accused may have an entrapment defense or an argument to exclude certain evidence from trial would be required to inform the accused of these defenses before a guilty plea could be accepted. This, of course, is not the law. *See, e.g., Frontero*, 452 F.2d at 415.[1] In short, there is no affirmative duty imposed on a trial judge to instruct a defendant regarding the insanity defense. *Mendenhall v. Hopper*, 453 F.Supp. 977, 983 (S.D.Ga.1978), *aff'd*, 591 F.2d 1342 (5th Cir. 1979).

■ Salisbury next urges that even if there is no general right to the insanity instruction under *Boykin*, he was entitled to the instruction by the court in his case because of the facts known to the judge which indicated that Salisbury had serious mental impairment around the time of the occurrence of the crimes. Admittedly, this is a significant fact and makes the case a difficult one. Salisbury, however, was represented by counsel. It is the attorney's duty to advise his client of the available options prior to a guilty plea so that the client's plea may be informed, knowing, and voluntary. *Lamb v. Estelle*, 667 F.2d 492, 494 (5th Cir.1982); *Herring v. Estelle*, 491 F.2d 125, 128 (5th Cir.1974). We would have to assume incompetence at a high level to find that counsel did not discuss the possibility of an insanity defense with the accused. An attorney's advice as to the availability of the insanity defense is enough to give notice to a defendant of the option. Thus, his plea can be intelligent and voluntary even though the judge did not inform the defendant himself of that option. *See Frontero*, 452 F.2d at 415 n. 7; *see also Hall v. Maggio*, 697 F.2d 641, 643 (5th Cir.1983). In the absence of any attack by Salisbury on the competency of his

---

**1.** Appellant attempts to distinguish these situations by asserting that the insanity defense is somehow more "fundamental" than other defenses. We fail to perceive anything more "fun-

damental" about a valid insanity defense than a valid entrapment defense or a valid evidentiary suppression claim since innocence is presumed until guilt is proved.

counsel, we must assume that Salisbury was thoroughly informed by counsel of the possibility of the insanity defense.

In support of his position, Salisbury relies principally upon *Mendenhall v. Hopper*, 453 F.Supp. at 977. In *Mendenhall*, an inmate who had entered guilty pleas to two counts of murder was granted a writ of habeas because neither the trial court nor his defense attorney informed him of the possibility of the insanity defense. *Mendenhall* held that the accused's plea was not entered voluntarily, knowingly, and intelligently because he was not informed of the availability of the insanity defense. 453 F.Supp. at 983.[2]

*Mendenhall* does not control. In the present case, Salisbury challenges only the actions of the judge in giving the instructions. In *Mendenhall*, by contrast, neither the judge nor the defense counsel advised Mendenhall of the insanity defense. The court in *Mendenhall* found that the *combination* of these factors was to render the plea of Mendenhall involuntary. *Id.* at 981–87. Indeed, the *Mendenhall* court, anticipating this case, specifically stated that a judge has no affirmative duty to instruct on the insanity defense even "when the evidence raises a bona fide doubt as to the defendant's sanity at the time of the crime." *Id.* at 983. In the present case, Salisbury was represented by counsel throughout the proceeding. Because Salisbury makes no claim of ineffective assistance of counsel, nor any claim that his attorney did not disclose to him the availability of the insanity defense, *Mendenhall* is not applicable. Further, the scanty record is devoid of any evidence of the nature of appellant's mental illness except a statement that he was "psychologically immature," a diagnosis which falls far short of insanity. We reject the proposition that the judge was obligated to inform

Salisbury of the insanity defense before his plea could be accepted as "intelligent and voluntary." [3]

## II. ALLEGED MISUNDERSTANDING OF PLEA BARGAIN

■ Salisbury urges that he should be granted the writ because an investigator with the District Attorney's office (who used to be Salisbury's athletic coach) and his relatives told him that he would go to a mental hospital instead of getting twenty years hard labor if he pled guilty. The record, however, contains no evidence of any improper influence by law enforcement officials or by Salisbury's relatives, and contains no evidence that any promises were made to Salisbury in exchange for his plea of guilty other than the sentence that was imposed upon him. The record indicates that the judge explained in detail to Salisbury what would happen to him if he pled guilty. The following exchange took place during the sentencing hearing:

Question (by the court): Has [your attorney] explained to you that he has submitted to the court what is called a plea bargain arrangement whereby concessions were asked of the D.A. as well as the judge; the D.A. in reducing the charge of aggravated rape to forcible rape, and the court in giving you a sentence of twenty (20) years for forcible rape and five (5) years on the kidnapping charge, both of the sentences to run concurrent? Do you understand that?

Answer (by Salisbury): Yes.

Question: Do you understand what concurrently means?

Answer: Yes.

Question: Has anybody else promised you anything else in regard to this case?

Answer: No, sir.

Question: Has anybody told you that you have to plead guilty?

---

2. In *Mendenhall,* the sentencing judge was also an attorney who had previously represented the accused. The judge in that case had told other people that Mendenhall was "a sick man."

3. This case concerns only the issue of what instructions must be given before a guilty plea may be accepted from an accused who is *at the time of the plea* competent to stand trial. This

opinion has no effect on the well established rule that where a trial judge has a bona fide doubt as to a defendant's competence to stand trial and assist in his defense, the judge must inquire into the matter sua sponte. *Pate v. Robinson,* 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966).

Answer: No, sir.

Question: Is this your own decision?

Answer: Yes, sir.

Question: Has it been made with consulting with your attorney as well as your family?

Answer: Yes, sir.

Question: Are you satisfied right now; you want to do this?

Answer: Yes.

Question: You want me to impose these sentences on you?

Answer: Yes.

Salisbury makes no claim before us that he was incompetent to understand the judge's questions. A staff psychiatrist at the hospital after evaluation found that Salisbury was competent at the time of the plea. We reject Salisbury's contention that he was improperly influenced by friends and relatives to plead guilty.

### CONCLUSION

We find no merit in Salisbury's claims, and we affirm the denial of the writ of habeas corpus.

AFFIRMED.