32 F.3d 570
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Daniel W. MAKEMSON, Petitioner/Appellant,
v.
Dan R. McBRIDE, Respondent/Appellee.
 No. 93-2646.
 United States Court of Appeals, Seventh Circuit.
 Argued Aug. 2, 1994.
Decided Aug. 16, 1994.
 
 Before COFFEY, EASTERBROOK and ROVNER, Circuit Judges.
 
 ORDER
 
 1
 This is an appeal from the denial of a petition for a writ of habeas corpus. On August 14, 1984, the State of Indiana filed an information charging Daniel Makemson with one count of unlawfully carrying a handgun. See Ind.Code Sec. 35-47-2-1. Because Makemson had been convicted of a felony within 15 years before the date of the offense, the offense was a Class D felony. See Ind.Code Sec. 35-47-2-23(c). In Indiana, "[t]he state may seek to have a person sentenced as an habitual offender for any felony by alleging, on a page separate from the rest of the charging instrument, that the person has accumulated two (2) prior unrelated felonies." Ind.Code Sec. 35-50-2-8(a). Attached to the information was a pleading alleging that Makemson was an habitual offender because he had been convicted of three prior felonies in Illinois: burglary in 1971; a bail bond violation in 1976; and an "offense related to a motor vehicle" in 1980. On August 16, 1984, Makemson pleaded guilty to the handgun charge and admitted the allegation that he was an habitual offender based on the 1976 and 1980 convictions.
 
 
 2
 On August 31, 1984, the State of Indiana added one count of theft, see Ind.Code Sec. 35-43-4-2(a), one count of receiving stolen property, see Ind.Code Sec. 35-43-4-2(b), and two counts of unlawfully removing vehicle identification numbers, see Ind.Code Sec. 9-1-5-1(d), to the information. Makemson pleaded guilty to the charges of theft and unlawfully removing vehicle identification numbers. The court, however, did not accept Makemson's plea of guilty to the charge of receiving stolen property, finding no factual basis for it. That charge was ultimately dismissed.
 
 
 3
 On September 17, 1984, Makemson was sentenced on all the charges to which he had pleaded guilty. He received a sentence of two years in prison for the charge of illegally carrying a handgun. Pursuant to the habitual offender statute, this sentence was enhanced by thirty years. He received a sentence of two years in prison for the theft conviction, to run concurrently with the sentence for the handgun offense conviction. Finally, he received a sentence of five years in prison for both counts of unlawfully removing vehicle identification numbers to run concurrently with each other and the sentence for the theft conviction, but consecutively with the sentence for the handgun offense conviction. The upshot of all of this was a total of 37 years in prison.
 
 
 4
 Makemson filed a petition for postconviction relief on October 9, 1985, in which he claimed that his waiver of his right to counsel before pleading guilty to the handgun and habitual offender charges was constitutionally invalid because the trial court had not admonished him of the dangers of self-representation. Makemson also claimed in his petition that his plea of guilty to those charges was unconstitutional because the trial court had failed to advise him of possible statutory defenses to the handgun charge and had misled him as to the sentence he faced and the likelihood that the handgun charge would be treated as a misdemeanor rather than a felony. The Indiana trial court denied Makemson's petition on the merits, see Makemson v. State, No. 84 S 106 (Fountain County Cir.Ct. May 14, 1987), and the Indiana Court of Appeals affirmed, see Makemson v. State, No. 23A01-8710-PC-249 (Ind.Ct.App. Mar. 14, 1988). The Indiana Supreme Court denied transfer.
 
 
 5
 In March 1993 Makemson filed a petition for a writ of habeas corpus under 28 U.S.C. Sec. 2254, in which he renewed his claims that his waiver of his right to counsel and his plea of guilty were constitutionally infirm. The district court found that the waiver and plea conformed with the Constitution and summarily dismissed Makemson's petition without prejudice. After the district court granted him a certificate of probable cause, Makemson filed the present appeal.
 
 
 6
 At the outset, it is important to specify what Makemson does and does not challenge in his habeas petition. He challenges his conviction for the handgun offense on the ground that the conviction was secured after a constitutionally invalid waiver of his right to counsel and on the alternative ground that the conviction was the product of a constitutionally invalid plea of guilty. He does not, however, challenge the habitual offender determination or his convictions of theft and of unlawful removal of vehicle identification numbers. Annulment of the conviction of the handgun offense would chop 32 years off Makemson's 37-year sentence.
 
 
 7
 Makemson contends that his waiver of his right to counsel and his plea of guilty to the handgun offense are constitutionally invalid for essentially the same two reasons: because the trial court was required to, but did not, advise him of the possibility of a complete statutory defense to the handgun charge, and because the trial court misled him into believing that he could receive less than a 30-year sentence if he pleaded guilty. Makemson's challenge to his plea of guilty is the stronger of his two challenges to his conviction on the handgun offense, so we discuss it first.
 
 
 8
 * A plea of guilty must be both knowing and voluntary to be constitutionally valid. Boykin v. Alabama, 395 U.S. 238, 242 (1969). The focus of this case is on the "knowing" component of this standard. A plea of guilty is knowing if it is made with an awareness of the rights being waived and an appreciation of the value of those rights in the particular case. North Carolina v. Alford, 400 U.S. 25, 31 (1970); McMann v. Richardson, 397 U.S. 759, 769-70 (1970); Brady v. United States, 397 U.S. 742, 748 (1970). There is no real dispute that, before he pleaded guilty, Makemson was aware of the rights he was waiving. The trial court advised Makemson that, in pleading guilty, he was waiving his right to a jury trial, his right to put on a defense, his right to cross-examine the state's witnesses, and his privilege against self-incrimination, see Tr. Aug. 16, 1984, at 4-7, and Makemson repeatedly told the court that he understood these rights. Makemson's contention is that he did not understand the value of these rights to his particular case.
 
 
 9
 In support of this contention, Makemson cites Stewart v. Peters, 958 F.2d 1379, 1381 (7th Cir.), cert. denied, 113 S.Ct. 239 (1992), where this court observed that a defendant cannot understand the value of the rights he is waiving in pleading guilty "[i]f he is led to believe that the procedural rights that he will be surrendering ... are worthless to him because he has no defense to the state's charges, when actually they are not worthless because he does have a defense." Makemson submits that he did not understand the value of the rights he was waiving because the trial court failed to advise him that he might have an affirmative statutory defense to the handgun offense.
 
 
 10
 The elements of the handgun offense to which Makemson pleaded guilty were: (1) the carrying of a handgun in one's vehicle or on or about one's person, except in one's own dwelling, property, or fixed place of business; (2) without a license; (3) after being convicted of a felony within the past 15 years. Ind.Code Secs. 35-47-2-1 and 35-47-2-23(c). The trial court advised Makemson of these elements. Makemson expressly admitted the carrying of a "22 pistol" with a two to two-and-one-half-inch barrel, without a license, and that he had been convicted of a felony within the last 15 years. Tr. Aug. 16, 1984, at 10-14. The court did not, however, inform Makemson that the statute does not apply to a person who is "carrying a handgun unloaded and in a secure wrapper from the place of purchase to his dwelling or fixed place of business, or to a place of repair or back to his dwelling or fixed place of business, or in moving from one dwelling or business to another." Ind.Code Sec. 35-47-2-2(11).
 
 
 11
 Nevertheless, due process does not require a court to seek out and advise a defendant of every possible defense to an offense that he is charged with committing. See United States v. Lumpkins, 845 F.2d 1444, 1450 (7th Cir.1988); cf. United States ex rel. Salisbury v. Blackburn, 792 F.2d 498, 500-01 (5th Cir.1986) (Constitution does not require trial court to instruct defendant regarding insanity defense). A court must advise a defendant of a possible defense to the charged offense only if it has reason to believe that the defense might apply.
 
 
 12
 Makemson directs us to language that he claims should have alerted the trial court to the possibility that he might have been entitled to the defense set forth in Ind.Code Sec. 35-47-2-2(11). Makemson stated during the guilty plea hearing that he "had some handguns and [he] took them back to where [he] got them. One handgun was a twenty-two pistol and a cap and ball pistol and a rifle and a shotgun." Tr. Aug. 16, 1984, at 3 (emphasis added). Makemson also stated during the hearing that he "took [the "22 pistol"] back to where [he] got it from." Tr. Aug. 16, 1984, at 10 (emphasis added). Finally, Makemson testified at his postconviction hearing that the handgun had been unloaded and that he had been transporting it, in a paper sack, to his home. Rec. at 168. These statements, Makemson submits, suggest that he was merely carrying an unloaded, securely wrapped handgun "from the place of purchase to his dwelling or fixed place of business, or to a place of repair or back to his dwelling or fixed place of business." Ind.Code Sec. 35-47-2-2(11).
 
 
 13
 Only with the benefit of hindsight do these statements suggest that the Sec. 35-47-2-2-(11) defense could possibly apply. Makemson's cryptic reference to taking the guns "back to where [he] got them" was not specific enough to draw the court's attention to the defense. As Makemson's attorney conceded during oral argument, even at his postconviction hearing, Makemson never suggested that he had been carrying the handgun home from the place of purchase or repair. And Makemson's postconviction testimony that the gun was unloaded and that he had been carrying it home in a paper sack obviously came too late to alert the court conducting the guilty plea hearing to the possible relevance of the Sec. 35-37-2-2-(11) defense.
 
 
 14
 Makemson next contends that his plea of guilty was not "knowing" because the trial court misinformed him of the minimum sentence that he could receive. At the time that Makemson was sentenced, the habitual offender statute provided in relevant part that "[t]he court shall sentence a person found to be an habitual criminal to an additional fixed term of thirty (30) years imprisonment to be added to the term of imprisonment imposed [for the underlying felony]." Ind.Code Sec. 35-50-2-8(e) (emphasis added). During the guilty plea hearing, the trial court informed Makemson that the handgun charge carried a possible sentence of one to four years in prison and that, by virtue of the habitual offender statute, that sentence could be enhanced up to 30 years. Tr. Aug. 16, 1983, at 1, 8, 11-12. Thus there is no serious dispute that the trial court misstated the minimum possible sentence that Makemson could receive: The court told Makemson that he could receive a sentence of less than 30 years in prison, whereas the minimum sentence that Makemson could have received was 31 years in prison.
 
 
 15
 But the relevant question is whether Makemson was actually misled by the court's misstatement. During his postconviction hearing, Makemson testified that he would not have pleaded guilty had he not believed that he could receive a sentence of less than 30 years in prison. Rec. at 167-168. The postconviction trial court found that "[t]here [was] no evidence that the use of the expression 'up to' was a misstatement of the penalty or in any way misled the petitioner." Rec. at 157. The state appellate court, after reviewing the transcript of the guilty plea hearing, concluded that:
 
 
 16
 "[w]e cannot say the defendant was misled by the court's use of the phrase 'up to thirty years' in connection with the habitual offender charge. The trial court made it clear that Makemson could receive a thirty (30) year sentence enhancement if he were convicted of the underlying handgun charge. The post-conviction [trial] court was not required to believe Makemson's statement that he believed at the time of the plea he would get less than a felony conviction and less than thirty (30) years.... The evidence in this case supports the post-conviction court's conclusion that the trial court's advisements before accepting the plea were adequate." Makemson v. State, No. 23A01-8710-PC-249, slip op. at 6-7 (Ind.Ct.App. Mar. 14, 1988).
 
 
 17
 We presume that the findings of the postconviction trial court are correct so long as they are fairly supported by the record. 28 U.S.C. Sec. 2254(d). The same holds true for the findings of the state appellate court. Johnson v. Trigg, No. 93-1935, slip op. at 9 (7th Cir. June 30, 1994). The record does not support the postconviction trial court's finding that the sentencing court did not misstate the minimum sentence that Makemson could receive. The court's repeated representations during the guilty plea hearing that Makemson could receive up to 30 years in prison contradicted the requirement of the habitual offender statute that an additional fixed term of 30 years in prison be added to the sentence for the underlying felony.
 
 
 18
 Nevertheless, there is support in the record for the finding of both state postconviction courts that Makemson was not actually misled by the trial court's misstatement of the minimum possible sentence. At the sentencing hearing on September 17, 1984, the court repeatedly told Makemson that, if the handgun offense were treated as a felony rather than a misdemeanor, the sentence for that offense would be enhanced by 30 years. Tr. Sept. 17, 1984, at 4-8. Yet Makemson did not claim that he had been led to believe that he could receive less than a 31-year sentence. On the contrary, he repeatedly told the court that he understood that the full 30-year enhancement would be tacked onto the sentence for the handgun offense. Tr. Sept. 17, 1984, at 5, 6, 8.
 
 
 19
 Makemson cannot overcome the presumption of correctness afforded the finding of both the postconviction courts that he was not actually misled by the state trial court's misstatement of the minimum possible sentence. The only evidence that directly supports Makemson's claim that he was actually misled into believing that he could receive a sentence of less than 30 years in prison is his testimony during his postconviction hearing that he would not have pleaded guilty but for his belief that he could receive a sentence of less than 31 years. This testimony is biased, as it was given for the sole purpose of chopping 32 years off a 37-year prison sentence.
 
 
 20
 Makemson argues that, even if he understood at his guilty plea hearing that the habitual offender enhancement would be 30 years and no less if the handgun offense were treated as a felony, the trial court led him to believe that he would not receive the enhancement because the handgun offense might be treated as a misdemeanor. Neither postconviction court addressed this argument. In any event, it lacks merit. The district court did not lead Makemson to believe that the handgun offense would be treated as a misdemeanor but merely informed Makemson that he had the right to seek misdemeanor treatment of the handgun offense:
 
 
 21
 BY THE COURT: If you plead guilty to the illegal carrying of a handgun as a felony, you face a jail sentence of two years, to which I could add two or to which I could subtract one. Do you understand that?
 
 
 22
 BY DANIEL W. MAKEMSON: I understand that, sir.
 
 
 23
 BY THE COURT: And if you get, you also have the right to ask for misdemeanor treatment with respect to that charge. Do you understand that?
 
 
 24
 BY DANIEL W. MAKEMSON: Yes, sir.
 
 
 25
 Tr. Aug. 16, 1984, at 8.
 
 
 26
 BY THE COURT: [Y]ou have the right to ask for misdemeanor treatment. The fact that you have prior convictions of felonies would be a factor that a Judge would take into consideration as to whether you'd be treated as a misdemeanor or not. Do you understand that?
 
 
 27
 BY DANIEL W. MAKEMSON: Yes, sir.
 
 
 28
 Tr. Aug. 16, 1984, at 12.
 
 
 29
 Thus, Makemson's plea of guilty to the handgun offense did not run afoul of the Constitution.
 
 II
 
 30
 Makemson contends that his waiver of his right to counsel before pleading guilty to the handgun charge was constitutionally invalid. A waiver of the Sixth Amendment right to counsel must be knowing and intelligent, which is to say that a defendant must be made aware of the dangers and disadvantages of self-representation, the nature of the charges against him, and the possible penalties. Faretta v. California, 422 U.S. 806, 835 (1975). The state postconviction courts found that Makemson's waiver of his right to counsel was knowing and intelligent. This finding is entitled to a presumption of correctness if supported by the record. 28 U.S.C. Sec. 2254(d); Cuppett v. Duckworth, 8 F.2d 1132, 1141 (7th Cir.1993) (en banc), cert. denied, 114 S.Ct. 1226 (1994). We believe that the finding of the state postconviction courts is supported by the record and hold that Makemson cannot overcome the presumption that his waiver of his right to counsel was constitutionally valid.
 
 
 31
 Makemson first argues that his waiver was invalid because the trial court failed to make him aware of the possible statutory defense to the handgun offense. This argument lacks merit because, as discussed above, in the absence of facts suggesting that the defense might apply, the trial court was not required to inform Makemson of the possible defense. Makemson also argues that his waiver of his right to counsel was invalid because the trial court failed to make him aware of the minimum sentence that he would receive if convicted of the handgun offense. This argument lacks merit because there is no evidence in the record--other than Makemson's self-serving postconviction hearing testimony--to support the proposition that Makemson was unaware that, if convicted of the handgun charge and if the charge were treated as a felony, he faced a sentence of at least 31 years in prison.
 
 
 32
 Even if Makemson was not entirely aware that the minimum sentence he could receive if convicted of the felony handgun offense was 31 years in prison, any doubt that this rendered his waiver invalid is washed away by the trial court's repeated warnings to Makemson of the risks and dangers of self-representation and Makemson's unequivocal desire to represent himself. Consider the following colloquy between Makemson and the trial court:
 
 
 33
 BY THE COURT: You ... have a right to be represented by a lawyer. If you don't have the money to hire a lawyer, you have the right to have one appointed at public expense. Do you understand that?
 
 
 34
 BY DANIEL W. MAKEMSON: Yes, sir.
 
 
 35
 BY THE COURT: Do you want a lawyer before you proceed any further with respect to this matter?
 
 
 36
 BY DANIEL W. MAKEMSON: No, we don't have to, sir.
 
 
 37
 BY THE COURT: Well, maybe I didn't make myself clear. Do you understand that if you're convicted of this illegal handgun charge, you face the possibility of a sentence of up to four years on that and then another sentence of thirty years on the habitual charge, if those allegations are proven to be true?
 
 
 38
 BY DANIEL W. MAKEMSON: Well, sure, I'll say this much. I had some handguns and I took them back to where I got them. One handgun was a twenty-two pistol and a cap and ball pistol and a rifle and a shotgun. There's no reason to lie about it. It's the truth. And if the truth hurts, it's the truth. I'm not going to lie out of it.
 
 
 39
 BY THE COURT: Well, I'm not--
 
 
 40
 BY DANIEL W. MAKEMSON: I--I understand what you're saying. But, what I'm saying is, if you're guilty of something, then okay, then I'll take my medicine, but I don't know--
 
 
 41
 BY THE COURT: Well, I have no objection to your taking your medicine, but this is a substantial dose of medicine that we're talking about here.
 
 
 42
 BY DANIEL W. MAKEMSON: I understand this.
 
 
 43
 BY THE COURT: Before you're sentenced by me to face a sentence of up to thirty-four years, I think it would be in your best interest to discuss it with an attorney before you make any statement and I'll be glad to appoint one for you if--
 
 
 44
 BY DANIEL W. MAKEMSON: That's okay. I appreciate it.
 
 
 45
 BY THE COURT: You do not want a lawyer?
 
 
 46
 BY DANIEL W. MAKEMSON: No, sir.
 
 
 47
 Tr. Aug. 16, 1984, at 3-4.
 
 
 48
 The trial court thus emphasized the severity of the potential penalties and specifically advised Makemson that, because the potential penalties were so severe, it would be in his best interest to consult with a lawyer. It is true that Makemson's formal education ended in the tenth grade and his previous experiences with the criminal justice system were in Illinois, not Indiana. Nevertheless, in light of the court's specific advice to consult with a lawyer before pleading guilty, Makemson cannot meritoriously argue that he was unaware of the dangers of self-representation.
 
 III
 
 49
 We recognize that 34 years in prison is a harsh sentence for someone like Makemson, whose criminal record consists mostly of petty offenses. Nevertheless, before Makemson was convicted of the handgun offense, the Indiana legislature determined that anyone convicted of a felony who had two prior felony convictions should be subject to a 30 year enhancement to his sentence.* Here, Makemson admitted to being a twice-convicted felon, and under all of the circumstances, the judgment of the district court is AFFIRMED.**
 
 
 
 *
 Indiana amended its habitual offender statute in 1985. See 1985 Ind.Acts 328, Sec. 2. This amendment allowed up to 10 years to be subtracted from the 30-year enhancement if one of the felonies that was being used as a basis for the enhancement was a Class D felony and up to 20 years to be subtracted from the enhancement if the felony for which the defendant was being sentenced was a Class D Felony. If this amended version of the habitual offender statute had applied in this case, Makemson would have been eligible for either the 10-year or the 20-year reduction. Indiana amended the habitual offender statute again in 1993. See 1993 Ind.Acts 164, Sec. 13. This amendment provides that the additional term of imprisonment for an habitual offender cannot exceed three times the presumptive sentence for the underlying offense. The underlying offense here, the illegal carrying of a handgun by a convicted felon, is a Class D felony. Under current law, the presumptive sentence for a Class D felony is 1 1/2 years. See 35-50-2-7. Thus, under the latest version of the habitual offender statute, Makemson would have received an enhancement of, at most, four and one-half years to his sentence for the handgun offense
 
 
 **
 The district court, for some reason, dismissed the petition without prejudice rather than with prejudice. The State of Indiana, however, does not ask us to modify the judgment so that the dismissal is with prejudice. The state could not obtain such relief without filing a cross-appeal. See UnitedStates v. American Ry. Express Co., 265 U.S. 425, 435 (1924); Sellers v. United States, 902 F.2d 598, 603 (7th Cir.1990); Jordan v. Duff & Phelps, Inc., 815 F.2d 429, 439 (7th Cir.1987), cert. dismissed, 485 U.S. 901 (1988)